[Crim. No. 3485.   First Dist., Div. One.   June 9, 1958.]

THE PEOPLE, Respondent, v. FREDDIE DIGGS,
Appellant.

Wilmont Sweeney, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

PETERS, P. J.—Freddie Diggs was charged with the unlawful sale and with the unlawful possession of marijuana, and with several priors. He was found guilty on both counts charged, and admitted priors of burglary and forgery. He appeals from the judgment entered on the verdict and from the order denying his motion for a new trial.

His sole contention on this appeal is that all of the evidence introduced against him was secured as the result of an unlawful search and seizure after an unlawful arrest. There is no merit to the contention.

The two offenses are alleged to have occurred on July 27, 1957. Sergeant Hilliard, attached to the Special Service Bureau of the Oakland Police Department, testified that about a month before July 27, 1957, he received information from a confidential informant that one Raymond Bardwell was selling narcotics in apartment 9 of 1026 Brush Street, Oakland, and that Bardwell had several other men staying with him. The informant had previously given Hilliard reliable information on such matters. The name of this informant was not requested by the defense, nor was there an objection to or a motion to strike this testimony.

On the evening of July 27, 1957, another informant by the name of Leroy Young came to Hilliard's office and told him that Bardwell was selling narcotics at 1026 Brush Street in Oakland, and that another person, whose name he did not know, was also dealing in narcotics at that address. Outside the presence of the jury on the issue of reasonable and probable cause, Hilliard then stated that Young was searched, found to have no narcotics and only some small change, and was given five one dollar bills, the serial numbers of which were recorded. Hilliard then drove Young to within several blocks of 1026 Brush Street, and Young then left the car in company with another officer. In a short time Young returned to the automobile and handed Hilliard three marijuana cigarettes, stating that he had purchased them for $2.00 from a man in apartment 9 at 1026 Brush Street. He told Hilliard that Bardwell was not then in the apartment, but that there were several men there; that he had purchased the cigarettes from a man the others had called "Freddie"; that Freddie had taken the cigarettes from a brown paper bag that he carried in his pocket; that there were more cigarettes in that bag; that Freddie wore a straw hat, a white shirt, a vest and checkered pants. Hilliard ordered several other officers to proceed to the apartment and to arrest the man described by Young.

Hilliard also testified that, although this was the first time he had used Young directly as an informant, shortly before July 27, 1957, he had talked with Young about the narcotic problem in Oakland and found Young well and correctly informed about dealers and sellers in that area. Hilliard knew that Young was an addict.

Four officers proceeded to 1026 Brush Street. They knocked on the door of apartment 9 and, when the door was opened, arrested the man who opened the door. They then walked into the apartment, which consisted of a living room-bedroom, kitchen and bathroom. There were five men in the apartment. Bardwell was not present. Diggs was sitting on a chair in the living room. A man by the name of McNeeley was sitting on another chair nearby. The officers searched the room and found a brown paper bag containing cigarettes, which later proved to be marijuana cigarettes, on the floor between the chair on which Diggs was sitting and the wall. Diggs denied that the bag belonged to him, stating that he did not live in the apartment; that he lived on Webster Street; that he was merely visiting, and that the tenant was named Bardwell.

The arresting officers had been told by Hilliard about Young's purchase with marked money in the apartment, and had also been given the description of the seller that Young had given Hilliard. The description was an accurate description of Diggs. Diggs was the only person in the room who fitted the description. When Diggs was searched, no narcotics were found on him, but the two marked bills previously given to Young, were found in his pocket. Diggs denied that he had received these bills from anyone that night, stating he had received the money for working.

As already stated, one of the occupants of the room when the police entered, was Reuben McNeeley. He testified that he and Diggs and another occupant of the room, who apparently lived in the apartment, had dropped into the apartment so that the tenant member of the group could change his shirt; that altogether there were then about five men in the apartment; that while waiting for the tenant to change his shirt, Diggs took some marijuana cigarettes from a brown paper bag he had in his pocket and Diggs and one of the other occupants of the room smoked them. While McNeeley was sitting there in the living room he saw Diggs make two sales of marijuana cigarettes to two unidentified men. When the police arrived the witness saw Diggs take the brown paper bag from his pocket and throw it on the floor. The witness admitted to three prior felony convictions.

The defendant testified that, while he was visiting in the apartment, one of the occupants asked if anyone had a five-dollar bill to exchange for five ones, and that he, Diggs, gave the unidentified man a five-dollar bill and received in exchange five ones. Two of these were the marked bills. He denied ever being in possession of the brown paper bag, or of throwing it on the floor, stated that he did not see who threw it on the floor, denied that he or anyone else in the room smoked marijuana that night, and denied giving or selling marijuana to anyone. He admitted seeing Leroy Young in the apartment, but denied selling any cigarettes to him.

The appellant does not challenge the sufficiency of the evidence to prove both possession and sale of marijuana. The evidence, if admissible, clearly, substantially and convincingly supports the implied findings on these issues. It is the contention of appellant that his arrest was illegal and that the evidence should not, therefore, have been introduced over his objections. It is contended that the only information that the police had prior to entering the apartment about appellant

was given to them by Young. It is contended that Young, an admitted addict, cannot be considered as a reliable informant because he had never before been used by the police for this purpose. Thus, so it is asserted, the police did not have reasonable and probable cause to arrest appellant.

It is true that an arrest and search are not based on reasonable and probable cause when the only information in the possession of the police is secured from an informant not known by the police to be reliable. (*People* v. *Goodo,* 147 Cal.App.2d 7 [304 P.2d 776].) But if information is received from such an informant, and there are substantial corroborating facts known or discovered, the arrest and search are proper. (*People* v. *Holguin,* 145 Cal.App.2d 520 [302 P.2d 635]; *Willson* v. *Superior Court,* 46 Cal.2d 291 [294 P.2d 36]; *People* v. *Maddox,* 46 Cal.2d 301 [294 P.2d 6]; *People* v. *Sayles,* 140 Cal.App.2d 657 [295 P.2d 579].)

Each case must be determined on its own facts. The test is, considering all the information in the hands of the police, would a reasonable police officer act on that information or would a reasonable officer seek further information before making the arrest and conducting the search. In the instant case Hilliard had information from a previously known reliable informant that Bardwell was selling narcotics at 1026 Brush Street, apartment 9, and that several other men were involved. Then, prior to July 27, 1957, Hilliard talked with Young about the narcotic problems in Oakland, and found that Young possessed reliable information about dealers and sellers in the area. Then Young came to Hilliard on July 27th and told him that Bardwell was selling narcotics from the apartment in question, and that possibly other individuals were involved. This corroborated what Hilliard already had been told by the unidentified reliable informant. It was some indication that Young was reliable. Then Hilliard, after searching Young, supplied him with marked bills, and sent him to the apartment. Young, in a short time, returned and gave Hilliard three marijuana cigarettes, stating that he had purchased them in the apartment from a man called ''Freddie'' who was dressed in a distinctive fashion. Thus, everything then known to Hilliard was consistent. From all this information Hilliard was justified in believing that someone in that particular apartment was selling marijuana, and that that someone was distinctively dressed and was named ''Freddie.'' Hilliard acted reasonably in directing the officers to arrest that man. The police were justified in entering the apartment

to look for that man. They had reasonable grounds to believe that a felony was being or had been committed in that apartment. When they entered the apartment they found a man as described by Young. He was the only man in the room who fitted the description. They then, quite properly, arrested appellant and searched him and the room, with the results already described. Under the circumstances, the arrest and search were reasonable and proper.

The judgment and order appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied July 9, 1958.