[L. A. No. 26644.   In Bank.   Feb. 1, 1962.]

JOHN WOODFORD PERRY, Petitioner, v. THE SUPE-
RIOR COURT OF LOS ANGELES COUNTY, Respond-
ent; THE PEOPLE, Real Party in Interest.

John Woodford Perry, in pro. per., for Petitioner.

No appearance for Respondent.

William B. McKesson, District Attorney, Harry B. Sondheim, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Real Party in Interest.

WHITE, J.—By this proceeding in prohibition petitioner challenges the jurisdiction of the Superior Court of Los Angeles County to try him upon an information filed by the district attorney in said court wherein petitioner was charged with the crime of grand theft allegedly committed by means of false representations made to obtain a loan of $800. (Pen. Code, §§ 484, 487.)

It is the contention of petitioner that he was held to answer following a preliminary examination at which the evidence was insufficient to establish reasonable or probable cause that a crime was committed or that petitioner was guilty thereof.

The sole question presented to us is whether the evidence adduced before the committing magistrate was sufficient to hold petitioner to answer for the offense of grand theft by false representations.

The record reveals that at the preliminary examination the complaining witness, Edna Elizabeth Joslyn, testified that she was introduced to petitioner by a fellow worker in the office in which she was employed. The fellow worker, Alvin Fredrickson, was a life insurance salesman and apparently had learned of petitioner's desire for a loan while attempting to write insurance on the latter's life.

Miss Joslyn testified that on March 23, 1961, there was a three-way telephone conversation between herself, Fredrickson, and petitioner. She further testified that when Fredrickson asked, " 'You want a loan of $800 for a week?' ", petitioner responded, " 'Yes.' " Her testimony continued: "And I said, 'I understand you will give me a demand of a thousand dollars on an escrow of a second loan on a piece of property that you own at 3660 Aureola . . . which is valued at $72,000.' Q. What did the defendant say? A. He said, 'Yes.' Q. He stated he owned the property at this 3660—— A. He answered

me in the affirmative that he did, yes. And then I said, 'Well, I would like to be assured'——as he told Mr. Fredrickson that the Atkins Properties was handling his loan in escrow—'I would like to be assured that somebody from the Atkins Property have this escrow.' [Petitioner] said, 'I will introduce you to Mr. Williams and he will tell you.' So Mr. Williams came on the phone and I said, 'Mr. Williams, I want to be assured of this escrow. Does Mr. Perry have an escrow about to be paid within a week on this second loan of this property on Aureola?' And he said, 'Yes.' I said, 'Do you know of any . . . obstacles that might prevent this money being paid to him out of this escrow?' And he said he didn't. So I said, 'Well, may I place a demand for a thousand dollars against this escrow?' And he [Williams] said 'Yes.' "

Miss Joslyn also testified that while she was obtaining the money, petitioner held a document in his hand and stated: " 'This is my loan with the Great Western,' because I thought he was showing me that his property, he was able to pay $34,000 and [it] had already been established that he had a $34,000 loan with the Great Western through Mr. Fredrickson." The complaining witness further stated: "After we left the bank where I gave him the money, and we went out to his car and I had demanded that I have a copy of this escrow, and he said he had it in his car, and he gave me . . . my copy, and he had put it in an envelope, . . . and wanted me to mail it. And I said, 'No, I want to go down there and deposit it myself.' And he didn't seem at all pleased about that, but he would rather I mail it. I said, 'I would rather go and deposit it.' So he said he would follow us down there. . . ."

The escrow demand, as introduced in evidence, read as follows: "Demand on Escrow . . . March 24, 1961, to the Atkins Properties, 3734 . . . West Adams Boulevard, Los Angeles, Re loan, John Woodford Perry. You are hereby authorized to pay from the loan of $12,500 the sum of $1,000 directly to Edna E. Joslyn. This assignment is irrevocable unless cancelled in writing by Edna E. Joslyn." The latter document bore the signature, "John Woodford Perry."

While at the office of Atkins Properties, Miss Joslyn testified that she learned through Mr. Williams, the individual who had earlier confirmed by telephone the prospect of petitioner's obtaining a second loan on the Aureola property, that the loan was to be deferred 15 days. Miss Joslyn stated: ". . . when we got outside, I asked Mr. Perry what this document—

why his loan was deferred for 15 days and to explain it to me. And he said, 'Well, . . . that is why I didn't want to come down here. I wanted you to mail this because they are going to get me a larger amount. I turned down the loan, the present loan I had, because it wasn't large enough.' . . . And then I said, 'Well, when do I get my money?' And he said, 'Give me five working days and, . . . if you don't get it out of this escrow, I will get the funds for you somewhere else.' ''

No payment was made to the complainant within the five days. On the fifth day Fredrickson delivered to Miss Joslyn petitioner's personal check for $1,000, which Miss Joslyn testified she regarded as ''just additional security.'' She explained: ''The importance I attached to was this escrow. I never attempted to cash that check. . . .'' After the lapse of the agreed-upon period of time, the complaining witness testified that she was told by petitioner that he could not raise the money to pay the aforesaid $1,000 except by paying a lending party an exorbitant amount of interest for a short-term $1,000 loan. Following a subsequent meeting with petitioner the latter gave the complainant a written demand on Atkins authorizing payment to Miss Joslyn of $1,200 out of the $12,500 loan to be negotiated by Atkins for petitioner on the Aureola Street property.

The complaining witness further testified that she was never repaid any part of the $800 she loaned to petitioner. She also stated that while she made numerous demands on personnel at Atkins Properties for the name of the company actually holding the ''first escrow'' involving the Aureola property, she was ''always referred'' to petitioner. But she stated that she had not been able to obtain from petitioner the name of the holder of the prior escrow on the Aureola property, and that: ''After much questioning, Miss Ginns [of Atkins Properties] gave it to me . . . very many weeks afterwards.''

When the court asked Miss Joslyn, ''Did you or did you not rely upon that representation made by the defendant that he owned that [Aureola] property?'', she replied: ''Well, to be perfectly frank with you, if we are going to separate that from the preliminaries, everything depended on what the Atkins people assured me that he had a loan being due to him in cash within a week. That was where I hinged my whole decision.''

Matt P. Flynn, who managed the property at 3660 Aureola, testified that during November 1960 he negotiated with petitioner concerning the latter's purchase of that property, and

that pursuant to those negotiations the Aureola property was "put into escrow." That escrow appears to have originated on approximately November 15, 1960, and was to exist for 30 days. Flynn testified that petitioner made some deposits in that escrow, but apparently the latter's full obligations under that escrow agreement were never fulfilled. Flynn stated that during December 1960 and January 1961 he conversed with petitioner concerning the escrow. When Flynn was asked, "And did you ever [then] state to Mr. Perry that you were thinking of closing the escrow on the Aureola property?", he responded, "Yes." Flynn continued: "It was either expressed or implied that we must cancel out the escrow if he didn't make his checks good that were on file in the escrow company."

On February 8, 1961, Flynn terminated the escrow by letter to Washington Escrow Company, the holder of that escrow, and Flynn testified that on approximately February 15, 1961, he received from Washington Escrow Company an acknowledgment of termination of the escrow. When Flynn was asked, "From the period of February 15, [to] March 23, or 24, [1961], did you have any further negotiations with Mr. Perry in regard to this property on Aureola?", he answered, "No. . . ."

Alvin Fredrickson testified that prior to March 23, 1961, petitioner had listed the Aureola property on a life insurance application as an address to which petitioner intended to move in the near future. Fredrickson also testified: "[Petitioner] had volunteered the information that he had an escrow, and . . . I had been licensed to see business opportunities and I had a slight familiarity with escrows in the State of California, and usually they are good collateral if you can put a claim against a valid existing escrow. And Miss Joslyn had displayed an interest in lending him money if she could establish something that would be sufficient security in her mind. Q. Now, did you question the defendant as regards the property that was in escrow? A. Yes. I asked him if this was the same piece of property that was mentioned in his life insurance application, and he assured me it was."

Fredrickson confirmed that he had participated in petitioner's telephone conversation with Miss Joslyn on March 23, 1961, and he was asked to relate that conversation. He responded: "Well, he said he had this piece of property under which Great Western Savings and Loan *had lent him* $34,000.

. . . This was the property on Aureola. . . . Well, I said on the basis of this escrow, Miss Joslyn would be interested in lending him the money. . . . Then we made an appointment for the following day to meet him at Miss Joslyn's savings and loan institution . . . in order to complete the transaction.'' (Emphasis added.)

The final witness for the People was Grace Ginns, a licensed real estate broker and employee of Atkins Properties. Miss Ginns testified that she conversed with petitioner concerning the Aureola property during the first part of 1961, and that: ''He wanted a $12,500 second trust deed to be placed over a trust deed by Great Western Savings and Loan for $33,700.'' When asked, ''Now, did the defendant state that it was his property or that the property was in escrow at this time?'' she responded: ''He said he was buying the piece of property wherein he had secured a first loan from Great Western and he wanted a second trust deed.''

Miss Ginns stated that petitioner had given her the name of Washington Escrow Company, as the place to ''get the information regarding the sale.'' Her testimony continued: ''Q. And what information were you to get from this Washington Escrow Company? A. Well, . . . we were to let him [petitioner] know if we could make a loan and, if we could make a loan, we would secure a lender and then he was to submit the escrow instructions for the sale to us, and then he would sign. He would open an escrow for the second trust deed in the same escrow, or wherever the lender wanted it, which is usually not the same escrow.'' In explaining why petitioner's loan for $12,500 was not completed, Miss Ginns stated: ''We had a lender who would make the loan, but we could not get the papers from the Washington Escrow as to the amount of the first [loan]. We have to have a copy of the loan instructions from the lender on the first trust deed before we can make a second trust deed.'' She also affirmed that Atkins Properties ''never did receive any papers on the first trust deed.''

Petitioner did not testify, nor did he offer any evidence in his behalf. It is provided in Penal Code, section 484, that: ''Every person who shall . . . knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money . . . is guilty of theft.'' Subdivision 1 of section 487 of the Penal Code provides, for instant purposes, that grand theft is committed when the personal property taken exceeds $200 in value.　　█　　To support a con-

viction of theft for obtaining property by false pretenses, it must be shown: (1) that the defendant made a false pretense or representation, (2) that the representation was made with intent to defraud the owner of his property, and (3) that the owner was in fact defrauded in that he parted with his property in reliance upon the representation. (*People* v. *Ashley,* 42 Cal.2d 246, 259 [267 P.2d 271]; *People* v. *Jones,* 36 Cal.2d 373, 377 [224 P.2d 353]; see Perkins, Criminal Law, ch. 4, § 4, pp. 267-268.)

Petitioner initially argues that there was not sufficient evidence produced at the preliminary examination that he made any false representations of past events or existing facts in obtaining the $800 loan from Miss Joslyn.

But it must be emphasized at the outset that the elements of an offense, herein grand theft by false representations, need not be established beyond a reasonable doubt in order to hold a defendant to answer following a preliminary examination. It is provided in section 872 of the Penal Code that a defendant must be held to answer if "it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof. . . .," and the latter phrase, "sufficient cause," is equivalent in meaning to "reasonable or probable cause." (*People* v. *Nagle,* 25 Cal.2d 216, 222 [153 P.2d 344].) As we stated in *Rogers* v. *Superior Court,* 46 Cal.2d 3, 7-8 [291 P.2d 929], " '[s]ufficient cause' and 'reasonable and probable cause' mean such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." Moreover, " '[r]easonable and probable cause' may exist although there may be some room for doubt." (*People* v. *Nagle, supra,* 25 Cal.2d 216, 222.)

It is axiomatic that in considering the propriety of a motion to set aside an information pursuant to section 995 of the Penal Code, the reviewing court may not substitute its judgment as to the weight of the evidence for that of the committing magistrate. And if there is some evidence in support of the information, the court will not inquire into the sufficiency thereof. (*People* v. *Flanders,* 140 Cal.App.2d 765, 768 [296 P.2d 13]; see *Greenberg* v. *Superior Court,* 19 Cal. 2d 319, 321-322 [121 P.2d 713].)

Although the magistrate, in reaching his decision, may weigh the evidence, resolve conflicts, and give or withhold credence to witnesses, such a balancing of the evidence is not

within the powers of a tribunal reviewing the magistrate's order. (See *People* v. *Jackson,* 146 Cal.App.2d 553, 556 [303 P.2d 767].) Thus, petitioner's contention concerning the claimed insufficiency of the evidence that petitioner made representations of past events or existing facts must be discussed in light of the aforesaid doctrines restricting the scope of review of a decision by a magistrate to hold a defendant to answer.

Miss Joslyn testified, as hereinbefore set forth, that petitioner made statements to her indicating either that he was then the owner of the Aureola property, or that substantial steps had been taken toward his acquiring the ownership thereof. But Flynn, the manager of that property, testified that the escrow under which petitioner was acquiring ownership had been terminated approximately six weeks prior to petitioner's above statements to Miss Joslyn, that the termination was under circumstances indicating petitioner's knowledge thereof, and that there were no further negotiations with the latter concerning the Aureola property prior to his alleged statements to Miss Joslyn on March 23 and 24, 1961. Also, Miss Ginns' testimony indicated that the loan upon the Aureola property by Great Western Savings and Loan had not materialized prior to March 24, 1961, the date upon which Miss Joslyn testified that petitioner represented to her that he had obtained a loan from Great Western. The latter testimony furnished sufficient grounds for the magistrate to "conscientiously entertain a strong suspicion" (*Rogers* v. *Superior Court, supra,* 46 Cal.2d 3, 7-8) that petitioner made false representations to Miss Joslyn about existing circumstances concerning the status of his ownership of the Aureola property, which statements were calculated to mislead the complaining witness. (See *People* v. *Schmitt,* 155 Cal.App.2d 87, 107 [317 P.2d 673].)

It is apparent that the alleged statements concerning ownership were material representations. From Miss Joslyn's standpoint, the truth or falsity of those propositions concerning petitioner's degree of ownership would influence her in arriving at a decision as to lending money to a mere potential buyer of property who, if the transaction fails to materialize is often left in a worsened financial position, or to an actual buyer substantially on the road toward "ownership," and who could fairly be expected to be in a reasonably sound financial condition even if the last and final steps in the purchase fail to materialize. (See *People* v. *Talbott,* 65 Cal.App.2d 654, 659

[151 P.2d 317] ; *Perkins, Criminal Law,* ch. 4, § 4, p. 266; *cf. People* v. *Rocha,* 130 Cal.App.2d 656, 660-661 [279 P.2d 836].)

It is also argued by petitioner that no evidence was presented that he had the requisite intent to defraud Miss Joslyn of the $800.　　■　　But ''[t]he intent to defraud is a question of fact to be determined from all the facts and circumstances of the case. [Citations.] It may be, and usually must be, inferred circumstantially.'' (*People* v. *Caruso,* 176 Cal. App.2d 272, 278, hear. den. [1 Cal.Rptr. 428].)

■　　There was evidence herein that petitioner made knowingly false statements to Miss Joslyn about his financial status in relation to the Aureola property, which statements appear to have misrepresented petitioner's actual ability to repay Miss Joslyn. The complaining witness also testified that petitioner appeared to be extremely unwilling for her to deliver the escrow demand to Atkins Properties in person (see *People* v. *Ashley, supra,* 42 Cal.2d 246, 252-253), and that he later explained to her that he did not wish her to go personally to Atkins because he was negotiating for a larger, second loan following his refusal of an original second loan granted by Atkins. The latter explanation, apparently given to allay Miss Joslyn's doubts, was false according to the testimony of Miss Ginns who indicated that no second loan was ever obtained by petitioner through Atkins on the Aureola property. Miss Joslyn additionally testified that petitioner consistently refused to give her the name of the company holding the first loan papers, so that she was prevented from verifying the apparent nonexistence of the $34,000 first loan. The inferences which could be drawn from such a course of conduct would manifestly allow the magistrate to conscientiously entertain a strong suspicion that the accused intended to defraud Miss Joslyn in making representations in order to borrow the $800.

Additionally it is argued that Miss Joslyn did not rely upon any statements by petitioner in parting with her property. It is true that the complaining witness testified at one point that her decision to lend the money to defendant hinged upon assurances by employees of Atkins Properties that a $12,500 loan was due defendant within one week, and that she could place a demand against that loan.　　■　　But '' 'the express testimony of a victim of false pretense that he was induced to part with his money by the fraudulent statements of the accused is not essential. It is sufficient if the inference of his

reliance could have been drawn from all of the evidence.' " (*People* v. *Schmidt,* 147 Cal.App.2d 222, 228 [305 P.2d 215]; accord *People* v. *Gordon,* 71 Cal.App.2d 606, 626 [163 P.2d 110].)

■ The evidence herein justified the magistrate in drawing an inference, sufficiently strong for purposes of holding petitioner to answer, that Miss Joslyn relied upon various representations by petitioner as to the status of his ownership of the Aureola property. It could have been inferred that the complainant relied especially upon the apparent representation that the first loan had been completed, the completion of which loan appears to have been necessary for the actual obtaining of the second loan through Atkins Properties, and against which second loan Miss Joslyn obtained the $1,000 demand on escrow. ■ It is not necessary that the defrauded party rely entirely upon the defendant's misrepresentation in parting with his property. "The false pretense or representation must have materially influenced the owner to part with his property, *but the false pretense need not be the sole inducing cause.*" (*People* v. *Ashley, supra,* 42 Cal.2d 246, 259.) (Emphasis added.)

For the foregoing reasons, the alternative writ heretofore issued is discharged, and the peremptory writ prayed for is denied.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Dooling, J., concurred.