[Civ. No. 22529.   First Dist., Div. One.   Oct. 21, 1965.]

JOSEPH A. GALENA et al., Plaintiffs and Appellants, v. THE MUNICIPAL COURT FOR THE OAKLAND-PIEDMONT JUDICIAL DISTRICT OF ALAMEDA COUNTY, Defendant and Respondent; THE PEOPLE, Real Party in Interest and Respondent.

Herman W. Mintz, James Giller, David Himmelman, John D. Nunes, Public Defender, and Richard M. Bryan, Assistant Public Defender, for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., and Robert R. Granucci, Deputy Attorneys General, for Defendant and Respondent and Real Party in Interest and Respondent.

SULLIVAN, P. J.—This is an appeal from an order of the superior court denying appellants' petition for a writ of mandate sought by them to compel the above entitled municipal court to quash a search warrant and to suppress evidence. The principal question which we must determine is whether the search warrant was issued upon probable cause and with the requisite showing of good cause for a direction therein that it might be served at any time of the day or night. We have concluded that the warrant was lawfully issued and served and that other contentions raised by appellants are without merit. We therefore affirm the trial court's order.

On January 9, 1964, at 9 p.m. a search warrant was issued to state narcotics Agent Stephen Woishnis by the Honorable Homer W. Buckley, Judge of the Municipal Court for the Oakland-Piedmont Judicial District, County of Alameda, commanding the immediate search in the day or nighttime "on the person of John Doe" and of the premises, later determined to be those of appellants, described as a basement apartment at 2845 East 10th Street in Oakland for narcotics and narcotic paraphernalia.

Agent Woishnis' affidavit for the warrant, after stating that a violation of Health and Safety Code section 11500 (possession of narcotics) had been committed by "John Doe" in Oakland on or about January 1, 1964, and that affiant had reasonable cause to believe that narcotics and narcotic paraphernalia were in the possession of John Doe and upon the above-mentioned premises, set forth the following facts as establishing probable cause for the issuance of the search warrant: "Ronald Lee CHOATE notified the affiant on 9 JAN 64 that the dexedrine he had in his possession was a portion of the dangerous drugs and narcotics acquired in a burglary of a drugstore in Kingsburg, Calif. On this date Donald WETZEL was arrested in possession of a large amount of narcotics and dangerous drugs in Alameda and it was ascertained by the affiant by contacting Chief of Police in Kingsburg that these

drugs were possibly those acquired in the Kingsburg burglary. CHOATE further notified the affiant that on 6 JAN 64 he and Donald WETZEL went to the vicinity of 2845 - E-10th St., Oakland, where WETZEL took a portion of the drugs consisting of opiates and dangerous drugs to a male in the basement apt., unknown to CHOATE, for disposal in the illicit market. During the past several weeks CHOATE on at least 5 occasions had gone to the vicinity of 2845 - E-10th St., basement apt., with various acquaintances including WETZEL and on each of these occasions these persons had gone to basement apt. where they acquired marihuana in half pound quantities. The last occasion being on or about 1 JAN 64 at which time CHOATE parked adjacent to the front door where as WETZEL went into the apt. and acquired a half pound of marihuana. COATE [sic] at this time via the open front door could see approximately five packages that he believes to be kilo quantities of marihuana. . . . CHOATE has related to the affiant information regarding other matters and other persons in the narcotic traffic which the affiant has ascertained to be correct through his experience in the narcotic field.''

Pursuant to the search warrant, Woishnis, together with other narcotic agents and police officers, entered appellants' premises on the same night and seized certain evidence. Shortly thereafter appellants were charged in the above-mentioned municipal court with violations of Health and Safety Code sections 11530 and 11555. They moved to quash the warrant by proceedings under Penal Code sections 1539 and 1540 and to suppress evidence, said motions being supported by declarations of both appellants.[1] Upon the hearing, the municipal court took the testimony of Agent Woishnis and at the conclusion thereof denied both motions. Appellants' petition for a writ of mandate seeking review of the magistrate's ruling (*People* v. *Keener* (1961) 55 Cal.2d 714, 720 [12 Cal. Rptr. 859, 361 P.2d 587]; *Aday* v. *Superior Court* (1961) 55 Cal.2d 789, 799-800 [13 Cal.Rptr. 415, 362 P.2d 47]; *Dunn* v. *Municipal Court* (1963) 220 Cal.App.2d 858, 867 [34 Cal. Rptr. 251]; *Williams* v. *Justice Court* (1964) 230 Cal.App.2d 87, 94 [40 Cal.Rptr. 724]) was denied by the superior court and this appeal followed.

---

[1] Although certain exhibits brought before us indicate that appellant Joseph A. Galena made such motion, appellants' petition for writ of mandate alleges, and the superior court found it to be true, that both appellants made the motion. The discrepancy is not material and we will treat the motion as that of both appellants.

At the hearing of appellants' motion in the municipal court, Agent Woishnis testified that prior to 4 p.m. on January 9, 1964, he had never seen, or had any personal contact with, the informant Ronald Lee Choate. The latter had been arrested on January 9 in Oakland by other narcotic agents. Woishnis had not received any information from Choate in the past and knew of no information given by Choate to other officers before January 9. The agent had first met Choate at the Alameda Police Department at about 4 p.m. on that day and thereupon proceeded to interrogate him. The arrest under attack was the first arrest made on any information furnished by Choate.

The record of the above proceedings in the municipal court shows that no evidence was introduced to controvert the statement made in the affidavit for the search warrant that Choate had given Woishnis information as to the source of the dexedrine in Choate's possession and as to the presence of narcotics and dangerous drugs in the apartment at 2845 East 10th Street. Woishnis testified however that before he executed the affidavit Choate gave him information which he was able to verify as being reliable based on his experience in the narcotics field.

Woishnis further testified that at about 8 p.m. on January 9 he went with Choate to the address on East 10th Street where Choate pointed out the premises to him but that he noticed nothing unusual about the place at that time. Neither he nor Choate knew the names of the people living there. The two men were in the vicinity just long enough to park their car down the street and walk by the house. Woishnis then returned to the Oakland Police Department, prepared the affidavit and search warrant and took them to Judge Buckley's residence where the latter issued the warrant just prior to 9 p.m. Woishnis testified that he was moving rapidly in order to prevent a loss or other disposition of evidence. He could not recall whether he discussed the contents of the affidavit with the judge.

The agent then returned to the East 10th Street premises where other agents had "staked out" the house while Woishnis was obtaining the search warrant. He handed the search warrant to Agent Lopez and the two agents went to the door. Lopez knocked on the door while Woishnis kept himself out of sight. Mrs. Galena opened the door, although she kept the chain on it, and when Lopez asked to see her husband, she replied that her husband was in bed. Lopez asked Mrs. Galena to awaken him. She refused and started to close the door.

Woishnis then stepped up and said "Police officer", and pressed up against the door to prevent her closing it—while Mrs. Galena was pressing from the inside. Mrs. Galena was yelling "Joe, police; Joe, police."[2]

The officers entered the apartment after they kicked through the door panelling and unbolted the door chain. As Woishnis stepped through the door he saw appellant Joseph Galena for the first time facing the door with a shotgun.

■ "A search warrant may be issued by a magistrate only upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property to be seized and the place to be searched. (Cal.Const., art. I, § 19; Pen. Code, §§ 1523, 1525.)" (*People* v. *Keener, supra,* 55 Cal.2d 714, 719.) The affidavit for the warrant "must set forth the facts tending to establish the grounds of the application, or probable cause for believing that they exist." (Pen. Code, § 1527.) The magistrate must issue the warrant only if he is satisfied of the existence of the grounds of the application or "that there is probable cause to believe their existence, . . ." (Pen. Code, § 1528.)

■ Recently in *People* v. *Govea* (1965) 235 Cal.App.2d 285, 296-297 [45 Cal.Rptr. 253], we summarized the basic rules governing the issuance of search warrants as follows: "In determining the sufficiency of an affidavit for the issuance of a search warrant, the standard or test of probable cause is approximately the same as that applicable to an arrest without a warrant, a commitment by a magistrate or an indictment by a grand jury [citations], namely, 'such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused.' [Citations.] ■ Facts stated in the affidavit are relevant on the issue of probable cause, irrespective of whether they are stated positively or on information and belief. [Citations.] ■ The supporting evidence is not limited to that which would be admissible at the trial on the issue of guilt. [Citations.] . . . ■ Generally speaking, in

---

[2]Mrs. Galena's declaration made under penalty of perjury stated in substance as follows: That upon answering a knock at her door, she found a man standing there who asked for "Tommy" and then for "Joe"; that she told him Joe was in bed and couldn't be awakened; that the man started pushing at the door and attempting to break in whereupon she became scared and went to her husband for assistance; that at no time did the visitors identify themselves as policemen until they forced their way in; that she never saw a search warrant; and that she never consented to the entry.

determining whether there is probable cause, each case must be decided on its own facts and circumstances. [Citations.]''

█ ■ It is settled law that the requisite probable cause ''may be based on information furnished by an informant if the supporting affidavit also recites facts indicating that reliance on the information is reasonable. [Citations.]'' (*People* v. *Keener, supra,* 55 Cal.2d 714, 721; *Williams* v. *Justice Court, supra,* 230 Cal.App.2d 87, 95-96; *Dunn* v. *Municipal Court, supra,* 220 Cal.App.2d 858, 871; *People* v. *Prieto* (1961) 191 Cal.App.2d 62, 69 [12 Cal.Rptr. 577]; *People* v. *Perez* (1961) 189 Cal.App.2d 526, 532 [11 Cal.Rptr. 456].) In other words, the magistrate's finding of probable cause may rest upon the hearsay statement of the informant ''so long as a substantial basis for crediting the hearsay is presented.'' (*Jones* v. *United States* (1960) 362 U.S. 257, 269 [80 S.Ct. 725, 4 L.Ed.2d 697, 707, 78 A.L.R.2d 233]; *Rugendorf* v. *United States* (1964) 376 U.S. 528, 533 [84 S.Ct. 825, 11 L.Ed.2d 887, 891]; *Aguilar* v. *Texas* (1964) 378 U.S. 108, 114 [84 S.Ct. 1509, 12 L.Ed.2d 723, 729]; *United States* v. *Ventresca* (1965) 380 U.S. 102, 107-108 [85 S.Ct. 741, 745-746, 13 L.Ed.2d 684, 688-689].) Nevertheless although the affidavit may be based on hearsay, the magistrate must be informed of some of the underlying circumstances from which the officer-affiant concluded that the informant was credible or his information reliable. (*Aguilar* v. *Texas, supra.*) In short, probable cause for the issuance of a search warrant may be based on the hearsay statement of an informant provided he is a reliable informant. (*People* v. *Prewitt* (1959) 52 Cal.2d 330, 337 [341 P.2d 1]; *Willson* v. *Superior Court* (1956) 46 Cal.2d 291, 294-295 [294 P.2d 36]; *People* v. *Boyles* (1955) 45 Cal.2d 652, 656 [290 P.2d 535].)

In *Willson, supra,* the Supreme Court was called upon to determine whether information obtained by the police from an unidentified informant was sufficient in the light of other evidence to establish reasonable cause for making an arrest without a warrant. Relying upon its earlier opinion in *Boyles, supra,* the court stated that ''evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable. [Citation.] In some cases the identity of, or past experience with, the informer may provide such evidence [citation], [fn. omitted] and in others it may be supplied by similar information from other sources or by the personal observations of the police.'' (46 Cal.2d at pp.

294-295.) In *People* v. *Diggs* (1958) 161 Cal.App.2d 167, 171 [326 P.2d 194], this court, speaking through Justice Peters, said: ''It is true that an arrest and search are not based on reasonable and probable cause when the only information in the possession of the police is secured from an informant not known by the police to be reliable. [Citation.] But if information is received from such an informant, and *there are substantial corroborating facts known or discovered,* the arrest and search are proper. [Citations.] Each case must be determined on its own facts. The test is, *considering all the information in the hands of the police, would a reasonable police officer act on that information* or would a reasonable officer seek further information before making the arrest and conducting the search.'' (Italics added.) While a person whose information has in the past led the police to valid suspects may be a reliable informant (*Willson* v. *Superior Court, supra,* 46 Cal.2d.291, 294-295; *People* v. *Penson* (1957) 148 Cal.App. 2d 537, 539 [307 P.2d 24]; *People* v. *Dewson* (1957) 150 Cal. App.2d 119, 128 [310 P.2d 162]; *People* v. *Swayze* (1963) 220 Cal.App.2d 476, 488 [34 Cal.Rptr. 5]) the converse is not true, namely, that *only* those persons furnishing tested information in the past are reliable informants.

█ Applying the above rules to the instant case, we are of the opinion that the affidavit for the warrant contained sufficient facts to support the magistrate's finding of probable cause and to justify his conclusion as a reasonable man that narcotics and drugs were probably in appellants' apartment. It is to be noted that the agent does not claim in the affidavit that he had any direct personal knowledge that there were narcotics on the premises. His affidavit states that on January 9 Wetzel ''was arrested in possession of a large amount of narcotics and dangerous drugs in Alameda'' and that on the same day Choate had dexedrine in his possession. It further states that on January 9 Choate informed Woishnis that the dexedrine he had in his possession ''was a *portion* of the dangerous drugs and narcotics acquired in a burglary of a drugstore in Kingsburg, Calif.'' (italics added) and also informed Woishnis that on January 6, Choate and Wetzel went to the premises in question ''where Wetzel took a *portion* of the drugs . . . to a male in the basement apt., . . . for disposal in the illicit market.'' (Italics added.)

Interpreting these allegations in a commonsense way (*United States* v. *Ventresca, supra,* 380 U.S. 102, 108-109 [85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689]), it is clear to us that,

while they could be couched in more exact language, they state in substance that both the dexedrine in Choate's possession on January 9 and the opiates and dangerous drugs taken by Wetzel to the apartment on January 6 were part of the drugs and narcotics acquired in the drugstore burglary. The allegations dealing with Choate's information as to the source of the dexedrine do not indicate that Choate was speaking with personal knowledge of the burglary or that *he* acquired the drugs and narcotics by a burglary. On the other hand, the allegations dealing with Wetzel's transportation of the drugs to the apartment clearly show that here Choate *was* speaking with personal knowledge. These latter are the crucial allegations asserting the presence of narcotics in the apartment. As set forth above, the allegations, following immediately thereafter, assert the presence of *marijuana* on the premises based on Choate's several visits to the vicinity of the apartment with various acquaintances including Wetzel, the last visit being on January 1. These last allegations, fairly read, indicate that Choate personally saw the marijuana and that this information which he communicated to Woishnis was spoken with his personal knowledge.

Was it reasonable to rely on the hearsay statements of Choate, a theretofore "untested" informant? Woishnis had personal knowledge that Wetzel was arrested on January 9 in possession of a large amount of narcotics and dangerous drugs and in addition thereto had ascertained by contacting the Chief of Police in Kingsburg "that these drugs were possibly those acquired in the Kingsburg burglary." A fair interpretation of this allegation is that Woishnis, upon making inquiry of the chief, had received information from this official source not only as to the fact of the burglary but as to the nature of the stolen property. Woishnis' knowledge of Wetzel's contraband and the information which he received from the Kingsburg police constituted "substantial corroborating facts known or discovered" by him (*People* v. *Diggs, supra,* 161 Cal. App.2d 167, 171; *Willson* v. *Superior Court, supra,* 46 Cal.2d 291, 294-295) so that Choate's story "was corroborated by other sources of information." (*Jones* v. *United States, supra,* 362 U.S. 257, 271 [80 S.Ct. 725, 4 L.Ed.2d 697, 708].) In the light of this additional information, it was reasonable for the magistrate to infer that Choate was speaking the truth and had some connection with, and reliable knowledge of, the local disposition of the drugs and narcotics from the Kings-

burg burglary. Since a material part of Choate's information, namely that relating to the burglary and to Choate's and Wetzel's possession of some of the loot, was clearly not fabricated, it could be reasonably concluded that the crucial part of Choate's information on which the warrant rested, namely that a large part of the loot had been brought to and was at the premises in question, was also true.

Additionally, we do not lose sight of the concluding allegations of the affidavit dealing with Woishnis' receipt from Choate of further information ''regarding other matters and other persons in the narcotic traffic'' which Woishnis found to be correct. While the pertinent allegations lack factual specificity, they are not without probative value in showing that Choate, some of whose story had been independently corroborated, was speaking the truth. (See *People* v. *Swayze, supra*, 220 Cal.App.2d 476, 490.) We conclude that the affidavit was sufficient to justify issuance of the warrant. If, as we have noted, its imprecision of language in some places may appear to raise problems of interpretation, we believe that they are properly laid to rest by considering the affidavit free of any ''grudging or negative attitude'' (*United States* v. *Ventresca, supra*, 380 U.S. 102, 108 [85 S.Ct. 741, 13 L.Ed. 684, 689]) and by giving it, as we are, a fair nontechnical reading as a whole.

■ Our above analysis disposes of appellants' argument that Choate was not a reliable informant since he had never given reliable information in the past and his statements to the agent were never corroborated. Appellants arbitrarily brush aside all corroboration in the affidavit, taking the position that ''the corroboration of an unreliable informant must be corroboration about the suspects in question, not corroboration that the informant is a criminal.'' *People* v. *Cedeno* (1963) 218 Cal.App.2d 213 [32 Cal.Rptr. 246], which is cited for this proposition, does not so hold and at oral argument appellants' counsel conceded that he could furnish us with no authority to support such statement. As we have explained in detail, Choate's statements were independently corroborated. Appellants' reliance on *People* v. *Gallegos* (1964) 62 Cal.2d 176 [41 Cal.Rptr. 590, 397 P.2d 174], and *People* v. *Cedeno, supra,* 218 Cal.App.2d 213, is misplaced. Those cases are distinguishable from the instant one since there it was determined that there was no other independent evidence corroborative of the statements of interested informers. (See

*People* v. *Gallegos, supra,* 62 Cal.2d 176, 179; *People* v. *Cedeno, supra,* 218 Cal.App.2d 213, 222.)[3]

We turn to appellants' next contention that there was not a sufficient showing of good cause for authorizing service of the warrant at any time of the day or night.[4] ▮ We believe that as now in effect Penal Code section 1533, while investing the magistrate with a broader discretion to direct a nighttime search, still requires a showing of some reason therefor in addition to what would normally be probable cause for issuing the warrant in the first place. We can conceive of situations however where these reasons would be in coincidence and where the facts alleged as a basis for the issuance of the warrant would simultaneously justify service of the warrant at night. The statute does not expressly require a separate statement as to such good cause or even an application for a warrant with such a direction as to service. To read into it such a requirement would only be to put an inordinate emphasis on form.

In *People* v. *Govea, supra,* 235 Cal.App.2d 285, 298-299, we held that there was a sufficient showing of good cause under section 1533 where the affidavits for the issuance of the warrant alleged that prior sales of heroin had occurred on the described premises at night. We felt that it was reasonable to search in the nighttime "when the suspects were more likely to be on the premises and in possession of narcotics." (235 Cal.App.2d at p. 299.)

▮ In the instant case a number of factors sustain a nighttime search. As distinguished from *Govea,* where the presence of narcotics on the premises had to be inferred from the sales, the affidavit in the present case establishes the trans-

---

[3]In view of our above conclusion, we need not consider respondent's alternative argument that the search of the premises may be upheld as one incidental to an arrest made on reasonable cause without a warrant.

[4]Penal Code section 1533, as amended in 1961, provides: "On a showing of good cause therefore, the magistrate may, in his discretion, insert a direction in the warrant that it may be served at any time of the day or night; in the absence of such a direction, the warrant may be served only in the daytime."

Prior to its amendment in 1961, section 1533 required the magistrate to direct service of the warrant in the daytime "unless the affidavits are positive that the property is on the person or in the place to be searched, in which case he may insert a direction that it be served at any time of the day or night." Cf. rule 41, Federal Rules of Criminal Procedure, which provides in pertinent part: "The warrant shall direct that it be served in the daytime, but if the affidavits are positive that the property is on the person or in the place to be searched, the warrant may direct that it be served at any time."

portation to and presence on the premises of *stolen* contraband. While this had been delivered there, three days before, the record shows that Agent Woishnis did not acquire the information for the warrant until January 9, that as soon as he prepared the affidavit he went to Judge Buckley's residence where the latter issued the warrant at 9 p.m. and that shortly thereafter the warrant was served. Judge Buckley therefore had before him, from the allegations of the warrant, the fact that there was stolen contraband on the premises to be searched and that two persons, Choate and Wetzel, having some connection with a portion of such contraband, had just been arrested. It is common knowledge that those in the possession of contraband or stolen goods make every effort to effectuate its immediate disposition when they learn that persons connected with it have been apprehended by the authorities. The urgency of making an immediate search must have been apparent to the magistrate not only from the above circumstances but from the fact that Agent Woishnis asked for the issuance of the warrant at 9 p.m. at the magistrate's residence, at which time he informed the judge of the urgency.[5] We are satisfied that there was the showing of good cause required by Penal Code section 1533.

Finally, appellants urge that there was an unreasonable delay between the observations made by Choate and the issuance of the warrant. The significant fact is that there was no unreasonable delay on the part of the state agents who secured the issuance of the warrant within a few hours after Agent Woishnis first met Choate on January 9. The affidavit states that Choate and Wetzel went to appellants' premises on January 6. We cannot say that three days is such an unreasonable period of time as to have a fatal effect on the quality of the information furnished by Choate.

The order is affirmed.

Molinari, J., and Sims, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 15, 1965.

---

[5]At the hearing in the municipal court, Judge Buckley stated: "My recollection is that now that I discussed with Agent Woishnis—because when they come out, sometimes they come two and three in a car—but on this evening; to my recollection, Agent Woishnis came alone and I asked him why he was alone. He said, 'The rest of the fellows are there, they're staked out watching the place. They're waiting for me to get this warrant and get back. We're in a hurry and waiting for me to get back with this warrant.'"