[Crim. No. 5023.   First Dist., Div. One.   Oct. 26, 1965.]

THE PEOPLE, Plaintiff and Appellant, v. TOMAS A. MELCHOR, Defendant and Respondent.

Thomas C. Lynch, Attorney General, Robert R. Granucci, Albert W. Harris, Jr., and John T. Murphy, Deputy Attorneys General, for Plaintiff and Appellant.

Edward T. Mancuso, Public Defender, and Claude D. Perasso, Deputy Public Defender, for Defendant and Respondent.

MOLINARI, J.—The People appeal from the trial court's order dismissing the information which charged defendant with the unlawful possession of narcotics in violation of Health and Safety Code section 11530. The sole question presented on this appeal is whether the officer who arrested defendant had reasonable and probable cause to do so thus justifying the incident search of defendant's person which disclosed narcotics.

The evidence concerning the arrest and search of defendant consists of the testimony at the preliminary hearing of Inspectors Yasinitsky and Rajewski of the San Francisco Police Department as follows: Yasinitsky testified that on the evening of December 4, 1964 information was given to Inspectors Panelli and Rajewski by a special police officer that a young man of medium height with dark hair and dark complexion had exhibited marijuana on the premises of the Hot Dog Palace located on Columbus Avenue in San Francisco; that on the basis of this information, which Panelli related to Yasinitsky, Inspectors Panelli, Rajewski, Webb and Yasinitsky went to the Hot Dog Palace; that Panelli and Rajewski entered the premises on Columbus Avenue while Webb and Yasinitsky stationed themselves at the Grant Avenue exit and observed the interior of the restaurant through a window; that Yasinitsky saw Panelli and Rajewski approach a person other than defendant on the premises; that defendant, who was about 8 feet from the person confronted, hastily left the premises through the Grant Avenue exit accompanied by two other persons; that since defendant fit the description of the suspect, Yasinitsky stopped these three persons, asked their identity and commenced a pat search of each for weapons and narcotics; that a search of defendant produced two matchboxes which were taped up and in which, through a small aperture, Yasinitsky was able to see green vegetation; and that upon opening the boxes Yasinitsky found vegetation resembling marijuana.

Rajewski testified that he and Panelli were walking down

Columbus Avenue on the evening of December 4, 1964 when a special police officer approached them and said " 'Some guy at the Hot Dog Palace is waving marijuana around. It's in matchboxes' ''; that the special police officer described the suspect as dark complected with dark-rimmed glasses and dark brown hair; that Rajewski then went across the street to the Hot Dog Palace; that once inside he saw a man fitting the special officer's description standing at the back of the premises talking to someone; that Rajewski approached a man other than defendant in order to see what defendant was going to do; that while questioning two other persons who were within a few feet of defendant, he saw defendant leave with another person; that the special officer who furnished the information concerning defendant was named "Bossie" or "Browsie," had been in the area at least nine or ten years, and on the evening in question was going "around on his beat"; that Rajewski did not request the special officer to accompany him to the Hot Dog Palace; and that he had never before received information from this special officer.

Both Yasinitsky and Rajewski testified that on the evening in question they did not have arrest or search warrants for anyone and that they did not see defendant violating any laws at the time of his arrest. Both the matchboxes and the greenish-brown vegetable substance were introduced into evidence, and it was stipulated that if the prosecution called a forensic chemist as a witness he would identify the vegetable substance as marijuana. Upon the basis of the foregoing evidence adduced before the committing magistrate defendant was held to answer for the offense of unlawfully possessing narcotics.

Defendant's position both before the superior court and on this appeal is that Yasinitsky did not possess the requisite reasonable and probable cause to justify the search of defendant without a search warrant or his arrest without an arrest warrant. ■ The basic rule is stated in *People* v. *Torres*, 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823], as follows: "A search without a warrant is proper where it is incident to a lawful arrest based on reasonable cause to believe that the accused has committed a felony. Such a search is not rendered unlawful merely because it precedes rather than follows the arrest. [Citations.] ■ Reasonable or probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty." ■ Reasonable cause to justify an arrest and search may consist of information sup-

plied by a reliable informant (*People* v. *Prewitt,* 52 Cal.2d 330, 337 [341 P.2d 1]; *Willson* v. *Superior Court,* 46 Cal.2d 291, 294-295 [294 P.2d 36]; *People* v. *Cedeno,* 218 Cal.App.2d 213, 219 [32 Cal.Rptr. 246]), and an arrest and search may be made solely on the basis of information received from a single reliable informant. (*People* v. *Cedeno, supra,* p. 219; *People* v. *Roland,* 183 Cal.App.2d 780, 784 [6 Cal.Rptr. 895]; *People* v. *Boyd,* 162 Cal.App.2d 332, 334 [327 P.2d 913].)

■ "Whether or not a police officer acts upon reasonable cause, where he relies upon information given by an informer, depends, in each instance, upon whether the reliance on the information was reasonable." (*People* v. *Cedeno, supra,* p. 219; see *Willson* v. *Superior Court, supra,* p. 294.) In determining reasonableness there is no exact formula, but each case must be decided on its own facts and circumstances and on the total atmosphere of the case. (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) "In making this determination the applicable test is: Considering all the information in the hands of the police, would a reasonable police officer act on that information or would a reasonable police officer seek further information before making the arrest and conducting the search?" (*People* v. *Cedeno, supra,* p. 220; *People* v. *Diggs,* 161 Cal.App.2d 167, 171 [326 P.2d 194].)

■ With particular regard to the reliability of an informant in determining reasonableness it is established as a fundamental principle that the informant must be known to the police officer to be reliable and must be a person whom the officer in good faith believes to be trustworthy. (*People* v. *Cedeno, supra,* p. 219; *People* v. *Bates,* 163 Cal.App.2d 847, 851 [330 P.2d 102].) Accordingly, in most cases the informant must not only be known to the officer, but the officer must have had sufficient dealings with the informant to give him reasonable cause to believe that the informant is reliable and that the information given by him is truthful. (*People* v. *Bates, supra,* p. 851; *People* v. *Goodo,* 147 Cal.App.2d 7, 8-9 [304 P.2d 776].) Reliability of the informant, however, is not necessarily limited to the officer's past experience with the informant, but also may be substantiated by the proven accuracy of the information given by the informant. Such substantiation may be supplied by corroborative facts known or discovered by the police officer. (*People* v. *Cedeno, supra,* p. 220; *People* v. *Bates, supra,* p. 852; *Willson* v. *Superior Court, supra,* pp. 294-295; *People* v. *Prewitt, supra,* p. 337.)

■ Before proceeding to consider the present case in light

of the foregoing principles, it should be pointed out that a committing magistrate, in reaching his decision as to whether to hold a defendant to answer, is empowered to weigh the evidence, resolve conflicts, and give or withhold credence to witnesses, but that such a balancing of the evidence is not within the powers of a tribunal reviewing the magistrate's order. (*Perry* v. *Superior Court,* 57 Cal.2d 276, 283-284 [19 Cal.Rptr. 1, 368 P.2d 529]; *People* v. *Jackson,* 146 Cal.App.2d 553, 556 [303 P.2d 767].)

Adverting to the instant case, we first point out the fact that the information given by the special officer did not come directly to Yasinitsky, the arresting officer, does not prevent reliance on its trustworthiness since it reached him through official police channels. (See *People* v. *Hood,* 150 Cal. App.2d 197, 201 [309 P.2d 856]; *People* v. *Bates, supra,* p. 852; *People* v. *Valdez,* 188 Cal.App.2d 750, 757 [10 Cal. Rptr. 664]; *People* v. *Stewart,* 189 Cal.App.2d 176, 178 [10 Cal.Rptr. 879]; *People* v. *Jackson,* 202 Cal.App.2d 569, 574 [21 Cal.Rptr. 44]; *People* v. *Schellin,* 227 Cal.App.2d 245, 251 [38 Cal.Rptr. 593].) Information which comes from an official source is presumed reliable unless it is manifestly shown to be otherwise. (*People* v. *Schellin, supra,* p. 251.) Accordingly, since the subject information first came into police channels when it was communicated to Rajewski and Panelli, our inquiry, at the threshold, is directed to whether these officers were reasonably entitled to rely upon the informant. Although the special officer had been known to Rajewski for a considerable period of time prior to the instant arrest, Rajewski had not received any information from him in the past. However, while in most cases an officer must have had sufficient dealings with the informant to give him reasonable cause to believe that the information is reliable and that the information given is reasonable, this requirement is not so inflexible as to require that the reliability of an informant be predicated, in each instance, upon past dealings. As distilled from the cases which have been called upon to determine whether a magistrate's finding of probable cause may rest upon the hearsay statement of an informant, the applicable test, in each instance, is whether such finding is predicated upon a substantial basis for crediting the hearsay as presented. (See *People* v. *Cedeno, supra,* p. 219; *Willson* v. *Superior Court, supra,* p. 294; *People* v. *Ingle, supra,* 53 Cal.2d 407, 412; *People* v. *Diggs, supra,* 161 Cal.App.2d 167, 171; and see *Jones* v. *United States,* 362 U.S. 257, 269 [80 S.Ct. 725, 4

L.Ed.2d 697, 78 A.L.R.2d 233]; *Rugendorf* v. *United States,* 376 U.S. 528, 533 [84 S.Ct. 825, 11 L.Ed.2d 887]; *Aguilar* v. *Texas,* 378 U.S. 108, 114 [84 S.Ct. 1509, 12 L.Ed.2d 723]; *United States* v. *Ventresca,* 380 U.S. 102, 108 [85 S.Ct. 741, 13 L.Ed.2d 684].)

The record in the instant case discloses that the informant was a person described as a "special police officer," whose name was either "Bossie" or "Browsie"; that he had been in the area some nine or ten years, and that on the evening in question he was going "around on his beat." From this testimony the magistrate was entitled to infer that the person designated as a "special police officer" was a patrol special officer designated and provided for in section 35.10 of the Charter of the City and County of San Francisco of which courts take judicial notice. (Code Civ. Proc., § 1875, subd. 3; *Clark* v. *City of Pasadena,* 102 Cal.App.2d 198, 200 [227 P.2d 306].) Since a reviewing court can properly take judicial notice of any matter of which the courts of original jurisdiction may properly take notice (*South Shore Land Co.* v. *Petersen,* 226 Cal.App.2d 725, 742 [38 Cal.Rptr. 392]; *Varcoe* v. *Lee,* 180 Cal. 338, 343 [181 P. 223]; *Ward Mfg. Co.* v. *Miley,* 131 Cal.App.2d 603, 608-609 [281 P.2d 343]), we note that section 35.10 of the San Francisco Charter provides that patrol special officers in the City and County of San Francisco are subject to appointment by the police commission which for good cause may suspend or dismiss said patrol special officers after a hearing on charges duly filed with the commission and after a fair and impartial trial; that each patrol special officer shall be at the time of his appointment not less than 21 years of age nor more than 40 years of age and must possess such physical qualifications as may be required by the commission; that such patrol special officers who are designated by the police commission as the owners of a certain beat or territory as may be fixed from time to time by said commission may dispose of their interest in said beat or territory to a person of good moral character, approved by the commission and eligible for appointment as a patrol special officer.[1] We note also that under section 35 of said charter

---

[1]Patrol special officers appointed by the police commission of any city, county, or city and county under the express terms of its charter who also under the terms of the charter are subject to such provisions as those provided for in section 35.10 of the charter do not come within the provisions of the Business and Professions Code providing for the regulation, licensing and registration of private patrol operators or operators of a private patrol service. (Bus. & Prof. Code, § 7522, subd.

the police commission is entrusted with the management of the Police Department of the City and County of San Francisco. Notice is also taken of section 172 of the charter which makes patrol special officers appointed pursuant to section 35.10 employees of said city and county entitling them to benefits under the workmen's compensation laws of the State of California "if injured while performing regular city and county police duties, which shall include only duties performed while preventing the commission of a crime, or while apprehending the person or persons committing such crime. . . ."

It is apparent from these provisions that a patrol special officer, who is appointed by the police commission, which has been entrusted with the management of the regular police department, and who is subject to disciplinary action by such commission, must not only be a person of good moral character but is also deemed by the citizens of San Francisco who have adopted the charter as a responsible and trustworthy person whose duties are akin to those of a regular police officer and who may, on occasion, be called upon to prevent the commission of crimes and to apprehend those committing such crimes. Accordingly, while patrol special officers of the City and County of San Francisco are not peace officers (see Pen. Code, § 817; 27 Ops. Cal. Atty. Gen. 213) and have only the powers of arrest which are afforded to private persons (see Pen. Code, §§ 836 and 837; 27 Ops. Cal. Atty. Gen. 214), we are nevertheless satisfied that in view of the position of responsibility they occupy in the community in supplying protection to persons and property, they are impressed with a badge of reliability and trustworthiness when they impart information to police officers. Therefore, applying the test of reasonableness, we hold that a reasonable police officer would be entitled to presume that a San Francisco patrol special

(e).) Section 7523 of the Business & Professions Code, moreover, provides, in pertinent part, for local regulation of patrol special officers as follows: "The provisions of this chapter shall not prevent the local authorities of any city, county, or city and county, by ordinance . . . from imposing local regulations upon any street patrol special officer or upon any person who furnishes street patrol service or street patrol special officer, requiring registration with an agency to be designated by the city, . . . including in such registration full information as to the identification and employment and subject to the right of the city . . . to allocate certain portions of the territory in such city . . . within which the activities of any street patrol service or person shall be confined. Any city . . . may refuse such registration to any person of bad moral character and may impose such reasonable additional requirements as are necessary to meet local needs and are not inconsistent with the provisions of this chapter."

officer is a reliable source of information, and would further be entitled to make an arrest and conduct a search solely on the basis of such information and without seeking further information.

The reliability of the special officer and the nature of the information communicated by him to Rajewski and Panelli in the present case provide a substantial basis for crediting such information. Rajewski's testimony that the special officer told him that " 'Some guy at the Hot Dog Palace is waving marijuana around. It's in matchboxes' " and that the special officer described that person as dark complected with dark-rimmed glasses and dark brown hair justified the magistrate in drawing an inference that the information which the special officer communicated to Rajewski and Panelli was spoken with his personal knowledge.

Assuming *arguendo* that the special officer involved in the instant case cannot be considered a reliable informant because of Panelli and Rajewski's lack of past dealings with him sufficient to give them reasonable cause to believe that he was reliable, we turn to the question of whether Yasinitsky had probable cause to arrest defendant based upon substantial corroborative facts known or discovered by Yasinitsky in addition to the information supplied by the special officer. Firstly, we note that Yasinitsky testified that he knew the Hot Dog Palace was a "hangout" for narcotic addicts. Such knowledge may constitute a corroborative circumstance in the determination of reasonableness establishing probable cause. (See *People* v. *Torres, supra,* 56 Cal.2d 864, 866.) Secondly, corroboration is supplied by the fact that defendant, who fit the description given by the special officer, hastily left the premises of the Hot Dog Palace while Rajewski and Panelli were questioning another person who was standing in the restaurant in close proximity to defendant. It is well settled in this state that furtive or suspicious conduct may supply the substantiation for information supplied by an un-reliable informant. (See *People* v. *Cedeno, supra,* 218 Cal. App.2d 213, 224-225, and cases there cited; see also *Willson* v. *Superior Court, supra,* 46 Cal.2d 291, 295; and *People* v. *Holguin,* 145 Cal.App.2d 520, 522-523 [302 P.2d 635].) We conclude, therefore, that Yasinitsky's personal knowledge and observations sufficiently corroborated the information supplied by the special officer so as to furnish probable cause for the arrest and search of defendant.

In view of the conclusion reached by us that the

arrest and search of defendant were made upon probable cause we need not dwell at length on the People's contention that the facts of the instant case come within the purview of the principle announced in *People* v. *Mickelson*, 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658], to the effect that circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the street for questioning; that, if the circumstances warrant it, the officer may, in self-protection, conduct a superficial search for concealed weapons; and that should such search then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search. In *Hood* v. *Superior Court*, 220 Cal.App.2d 242, 245 [33 Cal.Rptr. 782], it was held that the "temporary detentions" of pedestrians or motorists alluded to in *Mickelson* would only be permissible where there existed some suspicious or unusual circumstance. In the instant case Yasinitsky testified that the search of defendant was for "contraband and weapons." This "prime purpose" for the search, assert the People, was justified by Yasinitsky's knowledge that the Hot Dog Palace was a "hangout" for narcotic offenders and by the facts that Yasinitsky was on the lookout for such an offender and saw defendant make a hasty attempt to leave the restaurant when the police arrived. This assertion loses its force when it is considered without the support it derives from the information supplied by the special officer. Absent this information Yasinitsky's search of defendant would have to be justified on the basis of his knowledge that the Hot Dog Palace was a "hangout" for narcotic offenders coupled with his observation of a person unknown to him hastily leaving the premises. These circumstances do not amount, in our opinion, to the circumstances authorizing the temporary detention and superficial search countenanced by *Mickelson*.

The order is reversed.

Sullivan, P. J., and Sims, J., concurred.

A petition for a rehearing was denied November 22, 1965.