[No. 21007.   Department One. —November 25, 1893.]

THE PEOPLE, RESPONDENT, v. CHAS. WIEGER, APPELLANT

CRIMINAL LAW—OBTAINING GOODS UNDER FALSE PRETENSES—FALSE PRETENSE OF SOLVENCY—INTENTION TO PAY IMMATERIAL.—Where a person obtains goods of another upon the representation that he has a large cash capital and owes nothing, whereas, in fact, he is virtually insolvent, he is guilty of the crime of obtaining goods by false and fraudulent representations; and the fact that he obtains the goods with the honest intention of paying for them according to the contract of sale, and truly believes that he will be able to do so, does not take the case out of the statute.

ID.—EVIDENCE—PROCEEDINGS IN VOLUNTARY INSOLVENCY—DEPOSITION—ADMISSION OF KNOWLEDGE OF INSOLVENCY.—Upon the trial of a defendant charged with obtaining goods by false and fraudulent representations, where it appears that he represented that he had a large cash capital and owed nothing, his deposition taken in proceedings in voluntary insolvency prior to the bringing of the criminal charge against him, in which he admitted that at the time when he made the representations in question he was virtually insolvent, is admissible in evidence to show that the representations were false, and that the defendant knew it.

ID.—VOLUNTARY ADMISSIONS OF WITNESS IN CIVIL CASE.—Voluntary admissions made by a witness in a civil case, when he is not in custody

and has not been charged with a criminal offense, are competent evidence against him in a criminal prosecution subsequently inaugurated against him.

ID.—FAILURE TO OBJECT TO INCRIMINATION.—Statements of a witness in an action are voluntary, if he might have objected to answering the questions which elicited them, on the ground that to do so would criminate him, and failed to make such an objection

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order denying a new trial.

The facts are stated in the opinion.

*Holl & Dunn,* and *A. L. Hart,* for Appellant.

The making of a false or fraudulent representation is not, of itself, criminal, though it may constitute the basis of a civil action to set aside or rescind a transaction or contract. Such a pretense or representation, under our statute, constitutes only an element of the crime, and it becomes criminal only when it is accompanied with the fact of defrauding another person of money or property. (*Commonwealth* v. *Jeffries,* 7 Allen, 548; 83 Am. Dec. 712.) To defraud means unlawfully, designedly and knowingly to appropriate the property of another with a criminal intent. (Bouvier's Law Dict., vol. 1, p. 546; 5 Am. & Eng. Ency. of Law, 519.) The court erred in allowing the deposition of the defendant taken in his insolvency proceedings to be used against him in this criminal proceeding. (See *People* v. *Gibbons,* 43 Cal. 557; Pen. Code, sec. 1323.)

*Attorney-General W. H. H. Hart,* and *Deputy Attorney General Charles H. Jackson,* for Respondent.

The crime was made out by proof of obtaining the goods by the making of fraudulent representations knowing them to be false. (*State* v. *Evers,* 49 Mo. 542; *In re Snyder,* 17 Kan. 542; *Johnson* v. *State,* 41 Tex. 65; *Ryan* v. *State,* 45 Ga. 128; *People* v. *Jordan,* 66 Cal. 11; 56 Am. Rep. 73; *People* v. *Donaldson,* 70 Cal. 117; *People* v. *Wasservogle,* 77 Cal. 173.) The court

C. CAL.—23

properly admitted the defendant's testimony given during the insolvency proceedings, as he failed to make any objection to giving such evidence when his deposition was taken. (1 Bishop on Criminal Proceedings, sec. 1255; *People* v. *Martinez,* 66 Cal. 280; *People* v. *Taylor,* 59 Cal. 640; *People* v. *Thrall,* 50 Cal. 415; *Regina* v. *Coote,* L. R. 4 P. C., 599; 12 Cox, C. C., 557; *Rex* v. *Tubby,* 5 Car. & P. 530; *Hendrickson* v. *People,* 10 N. Y. 13; 61 Am. Dec. 721; *Regina* v. *Wheater,* 2 Moody, 45, 2 Lain, 157; *People* v. *Northey,* 77 Cal. 618.)

TEMPLE, C.—Appeal from a judgment and from an order denying a new trial.

The defendant was convicted of the offense of obtaining goods by false and fraudulent pretenses. He was prosecuted under section 532 of the Penal Code, which denounces as criminal "every person who knowingly and designedly by false or fraudulent representations or pretenses defrauds any other person of money or property."

On the trial defendant testified in his own behalf to the effect that he had no intention when he obtained the goods of defrauding the Sharpless firm; that he fully intended paying for the goods, and felt perfectly sure of his ability to do so when the bill would become due.

The court instructed the jury upon the subject of criminal intent as follows:

"The intent necessary to constitute the offense charged in this case is the intent to procure a credit whereby possession of property was obtained. It is not the intent to pay for such property after having thus procured it. Such intent, the one last mentioned, does not shield the defendant from the consequences of the intent first mentioned. So, if upon a consideration of all the evidence, you are satisfied beyond reasonable doubts that the defendant intended by the representations which it is admitted he made, and which he admitted he knew were not true, to Sharpless Brothers, to obtain the prop-

erty alleged to have been received by him, and did receive such property, then he is guilty of the offense charged, even though he intended, when he made such representations, to pay for the goods when the bills for them became due.   The obtaining of goods by such false representations is fraudulent, and the fraudulent character of such transaction is not changed by the fact that there may have been an intention at the time to pay for the goods.

"The reason of what I have just stated to you will be apparent to your minds by considering the fact that in very few cases, perhaps in none, could a man be convicted of this act of obtaining money or property under false pretenses, if he could make it apparent that, notwithstanding his obtaining the money or property, he would make it good at some future time by restoring the property or paying the money.   I have been thus particular of speaking of the intent here for the reason that I desire that you will not be led into any confusion on that subject, and I repeat that, while it may have been the intention of the defendant to pay for the goods; that intention constitutes no defense, if at the time when he made the representations he made them for the purpose of obtaining the goods or obtaining the credit on which he received the goods.

The jury had already been told that to constitute the offense there must exist the intent to defraud, that there must be actual fraud committed and accomplished by the use of false pretenses, made for the purpose, and the owner must have been induced to part with his property by the fraud.

Counsel claims that this instruction is erroneous, and contrary to the statute, which he contends does not denounce as criminal obtaining goods by false pretenses, but simply the act of defrauding another by obtaining goods in that mode.   That if defendant obtained the goods with the honest intent of paying for them according to the contract, and believed himself able to do so,

he has not defrauded the Sharpless firm, although he obtained the goods by false pretenses.

In the assumption that it must be held that defendant did not intend to defraud the Sharpless firm, if he intended at the time to pay for the goods according to the contract of sale, and truly believed that he was able to do so, I think counsel is in error. Deception, deliberately practised for the purpose of gaining an unfair advantage of another, is fraud. Goods obtained by such practices are obtained by fraud. One deprived of his property by such means is defrauded.

By the false pretenses the Sharpless firm was made to believe that defendant had a capital of $12,000 cash, and owed nothing, whereas he had at the most not more than $4,500, and owed $10,000. Relying upon this false statement they parted with their goods. They were unwilling to do this upon his mere promise to pay without proof of his ability to do so. His intention to pay, the law presumes from the fact of the purchase. The crime consists in the false statement in regard to ability to do that which the law would compel him to do if he possessed the financial ability.

Although sufficiently obvious upon reason, there are abundant authorities for this position.

In England the rule was declared in *Queen* v. *Naylor*, L. R. 1 Cr. Cas. 4. In that case a special verdict was rendered, in which the jury found, among other facts, that defendant, when he obtained the goods, intended to pay when it should be in his power to do so. The case having been reserved for consideration before the court of crown cases reserved, the opinion was as follows:

"We are all of the opinion that this conviction must be affirmed." There was no essential difference in the statutes. The condition of the cases in this country upon this subject is well stated in *Buntian* v. *State*, 15 Tex. App. 515, as follows:

"Again it is contended: 'If defendant intended to refund the money and redeem the pledge at the time he obtained the money, then he is not guilty of swindling,'

and that it was error in the charge of the court that the jury were not so instructed. The crime denounced by the statute is the obtaining by false pretenses. As was said in *State* v. *Thatcher*, 35 N. J. L. 445: 'The defendant's ability or his ultimate intention to do what the law would compel him as the principal debtor to do cannot save him.' And the language of the supreme court of Massachusetts is equally explicit: 'The intent to defraud is the intent by the use of such false means to induce another to part with his possession and confide it to defendant, when he would not otherwise have done so. Neither the promise to repay, nor the intention to do so, will deprive the false and fraudulent act in obtaining it of its criminality.' (*Commonwealth* v. *Coe*, 115 Mass. 481; *Commonwealth* v. *Mason*, 105 Mass. 163; 7 Am. Rep. 507.) 'The offense is complete when the property or money has been obtained by such means, and would not be purged by subsequent restoration or repayment. Evidence of the ability to make the repayment is therefore immaterial and inadmissible. The possession of the means of payment is entirely consistent with the fraud charged.'"

I think, therefore, the court did not err in giving the instruction. In holding this it is not necessary to agree with the reason given by the learned judge for the rule. That statement could not have injured the defendant.

It will follow, also, that defendant's objection to the information cannot be sustained.

Upon the trial the prosecution offered in evidence a copy of a deposition of the defendant in the proceeding in insolvency. It was admitted that defendant had filed his petition in insolvency; that while such proceedings were pending, defendant was cited to answer concerning his property, and that the deposition offered was the testimony given by him, but defendant objected to it as evidence, on the ground that it was incompetent, and that the statements, regarded as admissions or confessions, were not voluntary.

The objection was overruled, and defendant excepted.

The deposition was read, and showed by defendant's statements that when he made the representations in question he had only about $3,500 and owed $9,000. This, of course, proved that the representations were false and that defendant knew it.

No case was cited, nor have I found any, in which it has been held that statements made by a witness in a civil case, when the witness is not in custody and has not been charged with a criminal offense, voluntarily given, are not competent evidence against him in a prosecution subsequently inaugurated. And the statements are voluntary, if he might have objected to answering on the ground that it would criminate him, and failed to do so. 1 Bishop on Criminal Procedure, sec. 1255, lays down the rule thus: " The answers and other testimony which are voluntarily given as a witness in any case or proceeding, civil or criminal, as before a commissioner in bankruptcy, a committee of the legislature, a committing magistrate, a grand jury, a coroner, a fire inquest, or any court in an ordinary lawsuit, are as admissions or confessions competent against him on any issue in a criminal case to which they are pertinent." (See also 1 Greenleaf on Evidence, sec. 225.)

The question has been discussed in numerous cases, and the rule seems clearly established, as stated in *Hendrickson* v. *People*, 10 N. Y. 13, 61 Am. Dec. 721, "That where a witness answers questions upon examination on a trial tending to criminate himself, and to which he might have demurred, his answers may be used for all purposes. (2 Starkie's Evidence, 50; Roscoe's Criminal Evidence, 45.) Such answers are deemed voluntary, because the witness may refuse to answer any question tending to criminate him. (1 Greenleaf's Evidence, sec. 255.) If, however, he should be compelled to answer, after claiming his privilege, his answer will be deemed compulsory, and cannot be given in evidence against him."

The fact that defendant testified in a proceeding in insolvency, and appeared in obedience to a citation, did

not deprive him of the privilege.   His statements must, therefore, be considered voluntary.

It is hardly necessary to say that had the defendant, at the time he testified, been in custody, or had the criminal charge then been pending against him, and those charges under examination, a different question would have been presented.

I recommend that the order and judgment be affirmed.

SEARLS, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion, the order and judgment are affirmed.

PATERSON, J., GAROUTTE J., HARRISON, J.