[Crim. No. 13721.   Second Dist., Div. One.   Dec. 26, 1967.]

THE  PEOPLE,  Plaintiff  and  Respondent,  v.  RUSSELL
HAROLD FELSMAN, Defendant and Appellant.

438

Thomas W. Cochran for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—In a jury trial defendant was found guilty of grand theft. He appeals from the judgment (order granting probation).

Appellant contends that the evidence is insufficient to support his conviction of grand theft, and that there was no corroboration of the victim's testimony.

During the period of time from December 3, 1965, to February 10, 1966, defendant obtained $7,000 from Mrs. Ida Reiter, who was 65 years of age.

Mrs. Reiter testified in part as follows: On December 3, 1965, she attended a dance at the Long Beach Senior Citizens' Center. When she left the dance, defendant approached her outside the front door and asked her whether the center was a private club. They had a conversation, and defendant asked whether he might walk home with her. At her home, he asked her to have dinner with him on the next evening. She went to dinner with him, they had frequent dates thereafter, and she felt that she was in love with him. On December 14, defendant told her that he was "behind three car payments," and she asked what would happen if he did not make the payments, and he replied that he would lose the car. She asked him how much money he needed, and he replied $1,000. He also said that he wanted the money in cash, rather than a check; and she went to the bank, withdrew a thousand dollars, and gave the money to him. They continued to have dates frequently, and on January 26 (1966), defendant told her that he had had an automobile accident on Christmas Day 1964 which resulted in a lawsuit, and he needed $2,500 or he would "go to jail." She did not want to see him go to jail, so she went to the bank and withdrew $2,500 cash, which she gave to him. On February 10, he told her that he needed some money. She refused to give him money, but he returned the next day and they had a discussion wherein he told her that he needed

$1,000 for a Mexican divorce, and needed additional money to pay his bills. He also said that he was making $180 a week and that he would fix their budget so that whatever money they did not spend would be used to repay her. On several occasions prior to February 11, they discussed getting married, and he said that "May or June would be a nice time to get married." After the discussion on February 11, they went to the bank and she withdrew $3,500 cash, which she gave to him.

Mrs. Reiter also testified in substance as follows: On each of the occasions when she gave him the money ($1,000, $2,500, $3,500), she believed the statements he made to her regarding his reasons for needing the money, and she gave him the money in reliance on those statements. She also believed he was serious in his talks about marrying her. When she gave defendant the $2,500, he gave her a piece of paper which recited that he owed her that amount of money. When she gave him the $3,500, he tore up the piece of paper, and gave her a promissory note in the amount of $7,000 (which is the sum of $1,000, $2,500, and $3,500). On February 24, defendant told her that his mother was ill, and he had to go back East. He went away on February 26, and while he was gone, he frequently telephoned her, and she paid for the telephone calls. In one of the telephone calls (on April 18), she asked him why he had not started back to California, and he said: "If you loved me you would send me money to get back with." He also told her that he would pay interest on all the money, but not until February 1, 1967. She sent him $125, and he returned to California on April 22. They again discussed marriage and he said that they should put it off until his divorce was final. The last time she saw defendant was on April 26. A few days thereafter she went to the police department.

An insurance agent testified in substance that his company paid defendant's claim for damages arising from an automobile accident which occurred on December 25, 1964; that the amount of the claim was $46.65; and that defendant's policy of insurance, pursuant to which the claim was paid, covered personal injury and property damage.

An employee of the finance company through which defendant financed the purchase of his automobile testified in substance that a payment of $80.35 was due from defendant on December 13, 1965; the payment was made on December 17;

and there were no other payments due on the contract in December of that year.

The police officer who arrested defendant testified in substance as follows: When he arrested defendant, he advised defendant of his constitutional rights, and defendant said that he understood those rights. He told defendant that Mrs. Reiter had filed a complaint claiming that defendant had stolen $7,000 from her. Defendant said that he had received the money, but ''it was a loan''; when he received the $1,000, he was behind three car payments, and he spent the remainder of the $1,000 on living expenses and incidentals; when he received the $2,500, he had filed a claim with his insurance company, the insurance agent had told him not to worry about it, and he spent the $2,500 for living expenses and to pay his bills; when he received the $3,500, the ''original plan'' had been for him to get a Mexican divorce, but his attorney advised him that such divorce would not be legal in California, so he ''filed for divorce in Long Beach'' (a divorce action, filed by his wife, was pending in Long Beach at that time) ; and he had at one time been in love with Mrs. Reiter and planned to marry her, but he had changed his mind. Defendant also asked him (officer) whether ''there was a law against changing his mind.''

Defendant testified in substance as follows: He is a salesman for a dry cleaning company. He met Mrs. Reiter outside of the center on December 3, and asked to walk home with her. They made a date for the following evening. On that evening, she asked whether he was married. He told her that he was married, but that he had been separated for a number of years. They saw each other frequently thereafter. He ''was shopping around, trying to borrow some money,'' and she knew that. On December 14 he told her he would probably leave the city to try to borrow money from some friends. She asked him what he needed the money for, and he told her that he ''had a few car payments.'' She said that she had money in the bank and it was ''not doing anybody any good.'' He said that ''a thousand would do it,'' and she gave him $1,000 in cash. They had further discussions about marriage, and discussed his obtaining a Mexican divorce as a means of ''hurrying up'' the one-year waiting period required by California law. She wanted him to move into her apartment, but he said that ''to retain her image'' with her friends, it would be better for him to get a Mexican divorce. When she gave him the $1,000, she told him that whenever he needed money to

ask her; he took her at her word, and on January 26 asked her for $2,500. He told her that he had cashed two checks which he had received as payment for his work at the dry cleaning company, and that the checks had ''bounced'' and that he ''might go to jail over those checks.'' He also told her that he had had an accident, and that someone had filed a claim against him. He did not tell her he needed the money for that claim or that he would go to jail if he did not pay the claim. They went to her bank and she withdrew $2,500 and gave it to him. They had further discussions regarding his obtaining a Mexican divorce, and on February 10 he told her he needed $3,500—$1,000 for a Mexican divorce and the remainder for paying his bills. On the next day, they went to the bank and she withdrew $3,500 and gave it to him. He ''wanted it to be a legal transaction'' because her children ''might wonder what she had done'' with the money, so he gave her a promissory note for $3,500. Later, he tore up that note and gave her a note for $7,000. On Valentine's Day (February 14) he gave her a ring. She wanted him to move in with her. He spent every night with her until February 26, when he left town to see his mother, who had become ill. He telephoned Mrs. Reiter from different parts of the country and, in April, she sent him ''gas money'' of $125 because she wanted him to come home. He returned to Los Angeles in April. All the money which he received from her represented loans.

Defendant also testified in substance that in January he had a strong affection for Mrs. Reiter and determined to marry her; while he was in the East he decided he no longer had a strong affection for her and decided that he would not marry her; when he returned from the East he decided that he would not tell her that he no longer intended to marry her, because he did not want to hurt her feelings; in early 1966 she had led him to believe that she was wealthy; on the day he returned from the East she told him that she had given him all the money which she had saved during her life; he was surprised to learn that she had used all of her money, and told her he would pay her back; and the discovery that she was not wealthy had no bearing on his feelings for her.

Appellant contends that the evidence does not support his conviction of grand theft.

■ ''An information charging grand theft includes the offense of obtaining property by false pretenses'' (*People* v. *Platt*, 124 Cal.App.2d 123, 131 [268 P.2d 529]), and a

defendant " 'may be convicted of grand theft upon proof of acts establishing embezzlement, larceny, or obtaining money by false pretenses.' " (*People* v. *Andrews,* 165 Cal.App.2d 626, 638 [332 P.2d 408].) ▮ " 'Larceny amounting to grand theft can be committed by trick and device and usually results when the victim of a fraud intends not to pass complete title to his property, but that it shall be applied to a special purpose while the recipient intends to appropriate it to his own use.' " (*People* v. *Lafka,* 174 Cal.App.2d 312, 315 [344 P.2d 619], quoting from *People* v. *Andrews, supra,* p. 638.) "It is well settled that a loan of money induced by a fraudulent representation that it will be used for a specific purpose accompanied by an intent to steal amounts to larceny by trick and device." (*People* v. *Lafka, supra,* p. 315.) ▮ "Neither the promise to repay, nor the intention to do so, will deprive the false and fraudulent act in obtaining it of its criminality." (*People* v. *Wieger,* 100 Cal. 352, 357 [34 P. 826]; 1 Witkin, Cal. Crimes (1963) Crimes Against Property, § 403, p. 376.) ▮ "The intent to defraud is a question of fact to be determined from all of the facts and circumstances of the case." (*People* v. *Caruso,* 176 Cal.App.2d 272, 278 [1 Cal.Rptr. 428]; see *Perry* v. *Superior Court,* 57 Cal.2d 276, 285 [19 Cal.Rptr. 1, 368 P.2d 529].)

▮ In the present case, there was evidence that Mrs. Reiter lent $1,000 to defendant on December 14, 1965, in reliance upon his false representation that he needed the money to make three car payments or he would lose his car; on December 14, one car payment was due, and it was paid on December 17; and defendant admittedly used the $1,000 for his living expenses. There was also evidence that on January 26 Mrs. Reiter lent $2,500 to defendant in reliance upon his false representation that he needed the money to settle a lawsuit arising from an automobile accident or he would go to jail; defendant's claim for $46.65 for damages arising from that accident was paid pursuant to his policy of insurance which covered personal injury and property damages for automobile accidents; and he spent the money for his living expenses. There was further evidence that on February 11, Mrs. Reiter lent $3,500 to defendant in reliance upon his false representation that he would obtain a Mexican divorce. Although defendant testified that he loved Mrs. Reiter and intended to marry her, he also testified that he changed his mind when he returned from the East, at which time he learned that she had given him all of her money. It thus appears that his romantic

interest waned when her money was gone (cf. *People* v. *Lafka, supra,* p. 315). In the circumstances, the court could find that defendant intended to defraud Mrs. Reiter of money in excess of $200 (Pen. Code, § 487, subd. 1). The evidence supports the conviction of grand theft.

Appellant contends, however, that there was no corroboration of Mrs. Reiter's testimony, and that such corroboration is necessary to support a conviction of grand theft on the theory of false pretenses.

■ Corroboration of the victim's testimony is essential to support a conviction on the theory of false pretenses (see Pen. Code, § 1110; *People* v. *Andrews, supra,* p. 639), but corroboration is not necessary to sustain a conviction of grand theft by trick and device. (*People* v. *Lafka, supra,* p. 316; see *People* v. *Andrews, supra,* p. 639.)

In the present case, the insurance agent's testimony and insurance papers received in evidence corroborated Mrs. Reiter's testimony regarding defendant's pretense in obtaining the $2,500; and the testimony of the finance company employee and finance papers received in evidence corroborated her testimony regarding defendant's pretense in obtaining the $1,000. Moreover, as previously stated, ''a loan of money induced by a fraudulent representation that it will be used for a specific purpose accompanied by an intent to steal amounts to larceny by trick and device.'' (*People* v. *Lafka, supra,* p. 315.) Appellant's contention with reference to corroboration is without merit.

The judgment (order granting probation) is affirmed.

Fourt, J., and Lillie, J., concurred.