[No. B223803. Second Dist., Div. One. July 20, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
MONIQUE SHIONTEL BELL, Defendant and Appellant.

COUNSEL

Dawn Schock, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Victoria B. Wilson and Corey J. Robins, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MALLANO, P. J.—Monique Shiontel Bell used another person's name and personal identifying information to convince a lessor of an apartment that Bell was creditworthy. She leased the apartment and soon was delinquent in paying rent until she was evicted. A jury convicted Bell of identity theft and related charges, including grand theft. Bell challenges the grand theft conviction, claiming that it is not supported by substantial evidence that she had the intent to permanently deprive the lessor of its property. We disagree and affirm because Bell intended to permanently deprive the lessor of a leasehold interest, at least to the extent that Bell failed to pay rent during her occupancy.

## BACKGROUND

The information charged Bell with one count of identity theft in violation of subdivision (a) of Penal Code section 530.5 (count 1), one count of false personation in violation of section 529 (count 2), one count of making a false financial statement in violation of subdivision (1) of section 532a (count 3), and grand theft of personal property in violation of subdivision (a) of section 487 (count 4).[1]

The charges were tried to a jury, which found Bell guilty on all counts. The court sentenced Bell to two years eight months in state prison. Bell appealed.

The evidence introduced at trial showed that Bell signed a one-year apartment lease in April 2007 under the name of Leah Taylor, using Taylor's Social Security number and other personal identifying information in order to obtain approval of Bell's rental application. Bell then resided in the apartment with another woman and a little girl. The director of operations of Healstone Property Management, which managed the apartment complex, described the

---

[1] All subsequent statutory references are to the Penal Code.

rental history as follows: "There were collection issues, there were partial payments, late payments, and then the final was the returned check." "In June the late payments started." ". . . [H]aving the delinquent payments right off the bat was a red flag . . . ." After June, the problems persisted with "[l]ate payments July, August, partial payments through August, September, October. At which point in November there was a returned check along with a delinquency in which we had sent first the notice requesting that they surrender the property, pay the rent in full. And upon no response to that, we filed [an] unlawful detainer."

Pursuant to an unlawful detainer judgment, Healstone garnished $3,000 from the bank account of the real Leah Taylor for the unpaid rent. When Taylor sought to get her money back, claiming truthfully that she had never lived in or even applied to rent the apartment in question, the identity theft finally came to light. Taylor did get her $3,000 back but, as of the time of trial, was still trying to restore her credit rating to its previous status.

We appointed counsel to represent Bell on appeal. After examination of the record, counsel filed an opening brief raising no issues and asking us independently to review the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071]. On October 25, 2010, we advised Bell that she had 30 days within which she could personally submit any contentions or issues that she wished us to consider. We received no response.

After reviewing the record, we sent a letter to the parties requesting supplemental briefing on the issue of whether the conviction for grand theft is supported by substantial evidence. In response to our letter, the issue was briefed.

## DISCUSSION

Bell challenges the grand theft conviction on the basis that it is not supported by substantial evidence that she had the intent to permanently deprive the lessor of its property. We disagree and affirm because Bell intended to permanently deprive the lessor of a leasehold interest, at least to the extent that Bell failed to pay rent during her occupancy.

As to the grand theft count, the information alleged that Bell "did unlawfully take money and personal property of a value exceeding Four Hundred Dollars ($400), to wit rent money and U.S. currency $3045.41 the property of Leah Tomel Taylor, Healstone Property Management." According to the evidence, the rental arrearages exceeded that amount.

The court instructed the jury on only one legal theory with respect to the grand theft count, namely, theft by false pretenses. The instructions informed the jury that the defendant could be found guilty on that count only if the prosecution proved beyond a reasonable doubt that (1) the defendant made either a promise without intent to perform it or a false pretense or representation, (2) the defendant did so with the specific intent to defraud, (3) the victim believed and relied upon the promise or representation, which "was material in inducing [the victim] to part with [its] money or property even though the false pretense, representation or promise was not the sole cause," and (4) "[t]he theft was accomplished in that the alleged victim parted with [its] money or property intending to transfer ownership thereof."

The prosecutor argued to the jury that "the theft is, it is not the property itself, obviously the apartment is still there, they don't . . . walk away with the apartment, it is the value of the service, it is the value of the apartment during the months that they lived there without paying rent. That is a theft under false pretense because they get the apartment through false pretense, then they stop paying rent, and then the owner is out the benefit of those months' rent. That is the theft in this case."

On appeal, Bell contends that "[t]he facts that [she] paid the security deposit upon renting the apartment and then paid four [months'] rent, indicate that her intent was to use the false identification to effect the rental, but not to permanently deprive either the owner of the property or of the identity of possession of the apartment or the rent money." Respondent argues that Bell's false representations induced Healstone to allow Bell to take "possession and title to property that belonged to Healstone, namely the right to the apartment for one year pursuant to the lease which was worth around $12,000. The transfer of that property to [Bell] (e.g., the rights under the lease), based upon [Bell]'s fraudulent representations to Healstone (that she was Leah Taylor), cost Healstone approximately $4,700, based on the breach of contract, plus attorney and court costs of approximately $1,500 . . . ." Respondent further argues that "Healstone transferred legal 'ownership' of the right to live in the apartment for one year pursuant to 'Leah Taylor,' based on [Bell]'s false personation."

■ Our Supreme Court has admonished that California's intent-to-deprive-permanently requirement for the crime of theft is flexible and not to be taken literally. "[T]he general rule is that the intent to steal required for conviction of larceny is an intent to deprive the owner *permanently* of possession of the property. [Citations.]" (*People v. Davis* (1998) 19 Cal.4th 301, 307 [79 Cal.Rptr.2d 295, 965 P.2d 1165]; see also *People v. Turner* (1968) 267 Cal.App.2d 440, 443 [73 Cal.Rptr. 263].) The rule is not "inflexible," however, and in certain cases "the requisite intent to steal may be found even

though the defendant's primary purpose in taking the property is not to deprive the owner permanently of possession," such as "(1) when the defendant intends to 'sell' the property back to its owner, (2) when the defendant intends to claim a reward for 'finding' the property, and (3) when . . . the defendant intends to return the property to its owner for a 'refund.' " (*People v. Davis, supra,* 19 Cal.4th at p. 307.) In each of those exceptions, although the defendant does not intend to deprive the owner permanently of possession of the property, the defendant does intend to appropriate the value of permanent possession of the property.

In *People v. Avery* (2002) 27 Cal.4th 49 [115 Cal.Rptr.2d 403, 38 P.3d 1], our Supreme Court expanded on the flexibility of the rule: "We now conclude that an intent to take the property for so extended a period as to deprive the owner of a major portion of its value or enjoyment satisfies the common law, and therefore California, intent requirement." (*Id.* at p. 55.)

"The case generally cited (see, e.g., *People v. Kunkin* (1973) 9 Cal.3d 245, 251 [107 Cal.Rptr. 184, 507 P.2d 1392]) as establishing California's intent-to-deprive-permanently requirement itself implies that the requirement is not to be taken literally. In *People v. Brown* [(1894)] 105 Cal. 66 [38 P. 518], the defendant defended against a charge of stealing a bicycle by testifying that he intended to return it. We held that the testimony, if believed, would make him not guilty of larceny. 'While the felonious intent of the party taking need not necessarily be an intention to convert the property to his own use, still it must in all cases be an intent to wholly and permanently deprive the owner thereof.' (*Id.* at p. 69.) Despite the seemingly absolute language used here, the authority we cited 'as directly and fully sustaining this principle' (*ibid.*) shows we did not mean it absolutely. One of the cases we cited was *State v. Davis* [(1875)] 38 N.J.L. 176, which, as we explained in [*People v.*] *Davis, supra,* 19 Cal.4th at page 307 and footnote 4, helped establish that the intent to steal is satisfied when 'the defendant takes property with intent to use it temporarily and then to *abandon* it in circumstances making it unlikely the owner will recover it.' We also cited *State v. South* (1859) 28 N.J.L. 28, which, as noted in 2 LaFave and Scott, [Substantial Criminal Law (1986) Crimes Relating to Property], section 8.5(b), page 361, footnote 22, . . . applied 'common sense' and concluded that an intent to take temporarily but for an unreasonable length of time was 'ample evidence' of an intent to deprive permanently.

"For these reasons, we agree with the Court of Appeal in *People v. Zangari* [(2001)] 89 Cal.App.4th [1436,] 1443 [108 Cal.Rptr.2d 250], . . . that 'the intent to deprive an owner of the main value of his property is equivalent to the intent to permanently deprive an owner of property.' " (*People v. Avery, supra,* 27 Cal.4th at pp. 56–57.)

■ Following *Avery*, we conclude that the grand theft conviction is supported by substantial evidence because Bell intended to permanently deprive Healstone of a leasehold interest in real property, at least to the extent that Bell failed to pay rent during her occupancy. Bell took possession of the apartment by false pretenses and was delinquent in rent payments "right off the bat." She made partial payments, late payments, and a payment with a bad check. The jury could reasonably have concluded that she intended to deprive the owner of months of rent when she moved into the apartment under false pretenses. Using another's identity not only permitted her to lease the apartment, but also to have that person's bank account garnished instead of Bell's. And because nothing in the record suggests that she intended to pay all the rent at a later time, it is evident that she intended to permanently deprive Healstone of its leasehold interest, at least to the extent of the unpaid rent.

Bell's reliance on *People v. Turner, supra*, 267 Cal.App.2d 440, is misplaced. There, the defendant rented a car for two days at $7 per day and 7 cents per mile and made a $40 cash deposit, using "a false name and identification." (*Id.* at p. 441.) He was arrested 13 hours later 20 blocks from the rental place. The defendant testified that he intended to return the car when due and had cash to pay whatever the deposit did not cover. The *Turner* court held there was insufficient evidence of intent given the facts before it. But unlike in *Turner*, Bell offered no evidence as to her intent. And unlike in *Turner*, she was not arrested 13 hours after entering the lease, having paid a deposit which covered the lease payments up to then.

Because a leasehold interest is by its very nature "temporary," in that the lessor will get the property back at the end of the lease, Bell argues that she did not commit theft because she never intended to keep the apartment. This ignores the obvious fact that she intended to permanently deprive Healstone of the unpaid rent.

Car theft cases are not analogous. If a car is taken for a "joy ride" with no intent to permanently deprive its owner of the car, there is no theft. (*People v. Turner, supra*, 267 Cal.App.2d at p. 444.) But here a leasehold interest in a property was taken with the intent to permanently deprive the owner of rent; hence, there is a theft.

■ To say that a defendant's intent to deprive the owner permanently of a leasehold interest is the same as an intent to deprive the owner of property temporarily, and, thus, cannot support a theft conviction, confuses what is temporary and what is permanent and fails to adhere to the Supreme Court's stricture not to take literally the "intent-to-deprive-permanently requirement." The leasehold is temporary in that it is for a fixed term and not permanent in

that sense, but its value in terms of rent, when taken by a thief, is permanent when the thief does not intend to pay rent.

## DISPOSITION

The judgment is affirmed.

Johnson, J., concurred.

**ROTHSCHILD, J.,** Concurring and Dissenting.—The majority opinion works a major change in California's law of theft. Under California law, a defendant is guilty of theft only if the defendant acted with "an intent to deprive the owner *permanently* of possession of the property. [Citations.]" (*People v. Davis* (1998) 19 Cal.4th 301, 307 [79 Cal.Rptr.2d 295, 965 P.2d 1165].) The majority holds that an intent to deprive the owner *permanently* of a *temporary interest* in possession of property constitutes an intent to deprive the owner permanently of possession of property. That holding eliminates the intent-to-deprive-permanently requirement—*every* intent to deprive the owner *temporarily* of possession is an intent to deprive the owner permanently of a temporary interest in possession, which in turn, under the majority's holding, is an intent to deprive the owner *permanently* of possession. Thus, under the majority opinion, every intent to deprive the owner temporarily of possession will satisfy the intent element for theft. Perceiving no basis or authority for such a rewriting of the law of theft, I respectfully dissent from the affirmance of Bell's theft conviction.

Bell's conduct, as proven at trial, was wrongful and criminal, and she has been convicted and is being punished. Her conduct constituted identity theft (count 1), false personation (count 2), and making a false financial statement (count 3). The only remaining question is whether, in addition to committing those three offenses, she also committed grand theft (count 4). The record contains no evidence that she did.

In order to determine whether Bell committed theft, we must first identify the property she allegedly took. The information alleged that Bell "did unlawfully take money and personal property of a value exceeding [f]our [h]undred [d]ollars ($400), to wit rent money and U.S. currency $3045.41 the property of Leah Tomel Taylor, Healstone Property Management." (Some capitalization omitted.) The record, however, contains no evidence that Bell took any rent money or currency from anyone. The prosecution has never argued to the contrary, either in the trial court or on appeal. At trial, the prosecution likewise correctly conceded that Bell did not take the apartment ("obviously the apartment is still there, they don't . . . walk away with the apartment").

Instead, the prosecution took the position, variously phrased, that the property Bell took was a leasehold interest (or perhaps a portion of a leasehold interest) in the apartment. Respondent continues to advocate that position on appeal. The majority agrees and accepts the theory that the taking of (a portion of) a 12-month leasehold interest in an apartment can constitute a theft.

That theory is mistaken. For the reasons already explained, a temporary interest in possession of property cannot itself constitute stolen property for purposes of a theft charge. If it could, then so-called joyriding (the temporary taking of an automobile) would constitute theft—the joyrider intends to and does permanently deprive the owner of a temporary interest in the possession of the vehicle. But it is firmly established that joyriding does *not* constitute theft. (See 2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Property, §§ 23, 66, pp. 43, 95.) Indeed, joyriding was separately criminalized precisely because joyriders failed to satisfy the intend-to-deprive-permanently requirement that would be necessary for a theft conviction. (See *id.*, § 23, p. 43 ["The difficulty of convicting a 'joyrider' of larceny of an automobile under this rule led to the enactment of statutes imposing less serious punishment for temporary taking."].)

In effect, what Bell did was joyride in an apartment instead of a car. To the extent that her conduct carries an aura of theft, the reason is that the apartment's owner was in the business of selling temporary possessory interests—leasehold interests—in the apartment. Bell took (a portion of) such an interest, the owner can never get those lost months back, and the rent specified in the lease makes it easy to put a dollar value on the owner's loss. On reflection, however, none of those circumstances suffices to convert a temporary taking into a theft. A joyride in a rental car—taken directly from the owner's lot and with the intention never to pay—is still a joyride and not a theft.

The majority offers no persuasive argument to the contrary. It is true that the intent-to-deprive-permanently requirement is not absolutely "inflexible": If the defendant intends to sell the property back to the owner or claim a reward for " 'finding' " it or return it for a refund, then the requirement is satisfied. (*People v. Davis, supra*, 19 Cal.4th 301, 307.) As the majority correctly notes, each of those exceptions involves an intent to appropriate the value of permanent possession of the property—there is, for example, no material difference between an intent to sell the stolen property back to the owner and an intent to sell it to someone else. Nothing of the kind is present here, just as nothing of the kind is present in an ordinary case of joyriding. The record contains no evidence that Bell ever intended to appropriate the value of permanent possession of the apartment.

Likewise, if the defendant intended to retain the property "for so extended a period as to deprive the owner of a major portion of its value or

enjoyment," then the requirement is satisfied. (*People v. Avery* (2002) 27 Cal.4th 49, 55 [115 Cal.Rptr.2d 403, 38 P.3d 1].) Again, nothing of the kind is present here. Bell signed a 12-month lease, not a 100-year lease, and the record contains no evidence that she intended to retain the apartment for so extended a period as to deprive the owner of a major portion of its value.

Finally, the majority asserts that my position "confuses what is temporary and what is permanent" because the value of a leasehold interest "in terms of rent, when taken by a thief, is permanent when the thief does not intend to pay rent." (Maj. opn., *ante*, at pp. 828–829.) The same can be said, however, for *any* temporary taking—the putative thief intends to and does deprive the owner permanently of a temporary interest in possession, and that temporary interest has value. (Cf. 2 Witkin & Epstein, Cal. Criminal Law, *supra*, § 16, p. 36 [the crime of theft "is committed if the thing taken has any value, however slight"].) The majority's argument thus confirms that, under the majority's holding, every intent to deprive the owner temporarily of possession satisfies the intent element for theft.

For all of the foregoing reasons, I conclude that Bell's theft conviction is not supported by substantial evidence. I therefore respectfully dissent from the affirmance of that conviction, but I concur in the affirmance of the remainder of the superior court's judgment.

Appellant's petition for review by the Supreme Court was denied November 2, 2011, S195942. Kennard, J., was of the opinion that the petition should be granted.