Filed 9/11/13  P. v. Hagan CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

### (Sierra)

----

| | |
|---|---|
| THE PEOPLE, | C072508 |
| Plaintiff and Respondent, | (Super. Ct. No. CR02931X) |
| v. | |
| KENNETH W. HAGAN, | |
| Defendant and Appellant. | |

Defendant Kenneth W. Hagan wrote a check to his landlord for rent arrears and the check bounced.  The trial court found him guilty of knowingly issuing a check drawn on insufficient funds (Pen. Code, § 476a, subd. (a))[1] and grand theft (§ 487, subd. (a)), and granted him probation.

On appeal, defendant contends the evidence was insufficient to support his conviction for grand theft.  We disagree and shall affirm the judgment.

---

[1] Undesignated statutory references are to the Penal Code.

1

## FACTUAL BACKGROUND

Defendant entered into a written agreement to rent a residence from Michael Buck for $600 per month, starting March 1, 2011. Buck and defendant were the only witnesses at trial.

According to Buck, defendant was "basically always behind" in his rent, starting in the first month. Some months defendant made partial payments; other months he made no payments. By the first week of March 2012, defendant owed Buck $3,600.

The check at issue in this case, payable to Buck in the amount of $2,600, was drawn on defendant's account at Bank of America. The date of the check was in dispute: Buck testified that on March 8, defendant gave him a check dated March 9 and, when Buck told defendant he did not accept postdated checks, one or the other of them changed the date on the check to March 8. In contrast, defendant testified he wrote the check on March 9 and gave it to Buck on that date, and he does not know who changed the date of the check to March 8.

Buck testified when he received the check on March 8, he asked defendant if there were sufficient funds to cover it, and defendant said yes. But when Buck presented the check at Bank of America that day, he could not cash it. Within the following week, Buck twice tried to deposit defendant's check into his own account at Plumas County Bank, and both times the check was returned for insufficient funds.

Defendant testified and admitted he was able to make only partial rent payments beginning in November 2011, when he and his wife lost benefit payments; in other months, he made no payment. However, defendant disputed the amount owed to Buck: He testified he owed Buck only $1,400 in March 2012, and the balance of his $2,600 check represented advance rent payments for April and May 2012. Before he wrote the check, defendant testified, he contacted online lenders, hoping to borrow a substantial amount for medications and doctor bills, from which he could also pay Buck what he

2

already owed, plus an advance on future rent. Defendant testified he gave Buck's wife a note on March 8 that read, "The loan came through, which totaled $1,300. It should be in my account any time today or by noon Friday. There is enough to cover past due, plus three months." Defendant testified he knew on March 8 that the money was not in his account but when he wrote the check on March 9, he believed the funds would be available on that day. In fact, the loan never came through.

Defendant admitted on cross-examination he had been evicted from a previous rental for nonpayment of rent after several rent checks were dishonored.

The trial court rejected as "totally non-credible" defendant's testimony that he believed the check would be covered when presented and his testimony about the circumstances surrounding his purported loan application. It found defendant guilty of both issuing a check drawn on insufficient funds and grand theft.

## DISCUSSION

Defendant contends he should not have been convicted of grand theft because there is insufficient evidence he "intended to steal, and did steal" from Buck.

When the sufficiency of the evidence is challenged on appeal, we apply the familiar substantial evidence rule. We review the whole record in a light most favorable to the judgment to determine whether it contains substantial evidence, i.e., evidence that is credible and of solid value, from which a rational trier of fact could find beyond a reasonable doubt that the accused committed the offense. (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 859.) We must accept logical inferences that the factfinder might have drawn from the circumstantial evidence, and we will not set aside a judgment for insufficiency of the evidence, unless it clearly appears that on no hypothesis whatsoever is there sufficient substantial evidence to support the verdict. (See *People v. Cuellar* (2008) 165 Cal.App.4th 833, 838.)

3

Section 484 defines theft generally, and the relevant portion of section 484, subdivision (a) provides, "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, *by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property*, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft." (Italics added.) Section 486 divides theft into two degrees, "the first of which is termed grand theft; the second[,] petty theft" and section 487 provides some of the circumstances for grand theft, including: (1) where the property taken has a value exceeding $950; (2) where specific types of property are taken; and (3) where the property is taken from the person of another. (*People v. Cuellar, supra,* 165 Cal.App.4th at p. 837; see Pen. Code, § 487, as amended by Stats. 2010, chs. 693, § 1 & 694, § 1.5.) Defendant's argument that substantial evidence "does not support that [he] actually took from Mr. Buck something of a value greater than $950" thus rests on a mistakenly narrow view of the law. Defrauding a landlord out of his rent payment is theft. (Pen. Code, § 484.)

Indeed, one recent case holds that defrauding a landlord from the value of a real estate rental can constitute grand theft. (*People v. Bell* (2011) 197 Cal.App.4th 822, 828 (*Bell*).) In *Bell*, the Court of Appeal, Second Appellate District, Division One, rejected the tenant defendant's argument that there was insufficient evidence to support the inference she intended to permanently deprive the lessor of his property because, although she used false identification to effect the rental, she paid several months' rent before making partial payments, late payments and then having a returned check for the arrears. (*Id*. at pp. 825-826.) First, the court noted, "California's intent-to-deprive-

4

permanently requirement for the crime of theft is flexible and not to be taken literally"
(*Bell,* at p. 826) and " 'an intent to take the property for so extended a period as to
deprive the owner of a major portion of its value or enjoyment satisfies the common law,
and therefore California, intent requirement.' " (*Id.* at p. 827, quoting *People v. Avery*
(2002) 27 Cal.4th 49, 55.) The defendant's grand theft conviction was supported by
sufficient evidence, the *Bell* court reasoned, because there was evidence the defendant
"intended to permanently deprive [the landlord] of a leasehold interest in real property, at
least to the extent that Bell failed to pay rent during her occupancy. Bell took possession
of the apartment by false pretenses and was delinquent in rent payments 'right off the
bat.' She made partial payments, late payments, and a payment with a bad check. The
jury could reasonably have concluded that she intended to deprive the owner of months
of rent when she moved into the apartment under false pretenses. Using another's
identity not only permitted her to lease the apartment, but also to have that person's bank
account garnished instead of Bell's. And because nothing in the record suggests that she
intended to pay all the rent at a later time, it is evident that she intended to permanently
deprive [the landlord] of its leasehold interest, at least to the extent of the unpaid rent."
(*Bell*, *supra*, 197 Cal.App.4th at p. 828.)

Here, as in *Bell*, there was evidence defendant was delinquent in rent payments
from the first month, made partial payments, late payments, and payment with a bad
check. (Cf. *Bell*, *supra*, 197 Cal.App.4th at p. 828.) As in *Bell*, nothing in this record
suggested defendant intended to pay Buck the rent he owed at a later time; rather, the
court credited evidence that defendant gave Buck what he knew to be a bad check. Nor
was this the first time defendant had passed bad rent checks to a landlord. Taken
together, this evidence was sufficient for the trial court to find that defendant intended to
permanently deprive Buck of the rent owed, which is sufficient to find he committed
grand theft.

## DISPOSITION

The judgment is affirmed.

             BUTZ            , Acting P. J.

We concur:

        MURRAY      , J.

        HOCH        , J.