Filed 6/18/14  P. v. Kimble CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LARRY CUNNINGHAM KIMBLE,<br><br>    Defendant and Appellant. | C069892<br><br>(Super. Ct. No. SF115001A) |

A jury convicted defendant Larry Cunningham Kimble of six counts of residential burglary, one count of theft from an elder, and two counts of sale of securities by means of false statements.  The trial court sentenced him to eight years in prison.

Defendant now contends (1) his count 14 conviction for theft from an elder must be reversed because there is insufficient evidence of his intent to permanently deprive the victims of their money; (2) the trial court erred in failing to instruct the jury on the element of intent to permanently deprive the victims of their money in connection with

1

count 14; and (3) the sentences on count 14 [theft from an elder] and count 16 [sale of securities by means of false statements] must be stayed pursuant to Penal Code section 654.[1] The Attorney General agrees with defendant's third contention.

We conclude (1) defendant's intent to permanently deprive the victims of their money is immaterial because on count 14, the People elected to proceed on the theory of theft by false pretenses, and intent to permanently deprive the victims of their money is not an element of theft by false pretenses; (2) accordingly, the trial court did not err in failing to instruct on intent to permanently deprive the victims of their money; and (3) the sentences on counts 14 and 16 must be stayed pursuant to section 654.

We will modify the judgment to stay the sentences on counts 14 and 16 and affirm the judgment as modified.

BACKGROUND

Defendant obtained $252,000 from Roy T. and Barbara T. between May 2007 and October 2009, along with a business loan of $24,000. In addition, defendant obtained $20,000 from Ray T. and Joanne T. in July 2008.[2] The $252,000 from Roy and Barbara and the $20,000 from Ray and Joanne were intended to be investments in defendant's company MT2Y, which sold medical records software and energy-efficient electric adapters and light fixtures. The victims were 75 years of age or older when defendant obtained the money.

Defendant belonged to the same church as Roy and Barbara and Roy thought of defendant as a friend. Defendant told them that in return for their investment, they would receive shares representing 15 or 17 percent of MT2Y. According to Roy, defendant said

---

[1] Undesignated statutory references are to the Penal Code.

[2] We will refer to certain individuals by their first names for clarity.

2

they could do very well investing with defendant. Defendant did not explain the risks associated with the investment or how they could sell their MT2Y shares.

Defendant took Roy and Barbara's money on 13 occasions. On each occasion, Roy or Barbara wrote defendant a check and gave the check to defendant or defendant's son at Roy and Barbara's home. Roy continued to give defendant money because defendant assured Roy everything was fine with MT2Y.

MT2Y's salesmen prepared marketing materials, attended trade shows, and sold and installed products. However, there was no market for the medical records software MT2Y was selling. The energy management side of MT2Y also experienced problems. In about 2007, MT2Y could not obtain an Underwriters Laboratory certification for the first electric adapter it sought to sell in the United States. MT2Y had to finance the certification process for a second electric adapter. In addition, the sale of MT2Y's products was adversely affected by the poor economy. Sometime after July 2008, defendant unsuccessfully solicited additional money from Ray in order to proceed with a job. MT2Y paid defendant's son Christopher an advance on sales commissions even though MT2Y's sales did not justify the amount Christopher was paid. At the same time, MT2Y had trouble paying Christopher on time in 2007 and 2009. MT2Y "never got to the end of a year that was profitable." In fact, defendant told police it was not until 2009 that MT2Y "physically rolled it out to generate revenue."

As for the $24,000 loan from Roy and Barbara to MT2Y, defendant repeatedly promised to repay them. But Roy and Barbara did not receive any of their money back.

Roy told his brother Ray about defendant. Ray and Joanne invested $20,000 with defendant in July 2008. Defendant did not tell Ray about any risk of loss; instead he gave Ray positive updates about the business. Ray believed he would receive dividends, but he and Joanne never received any return on their investment in MT2Y.

Defendant also obtained money from other members of his church: Steven W., Mark L., and Joe E. Those individuals testified for defendant at his trial.

3

Steven W. invested $15,000 in MT2Y in 2006. Defendant did not promise Steven W. a return on his investment. Steven W. understood he would not receive any money from MT2Y if the company did not make a profit. Steven W.'s son Jeff was married to defendant's daughter and Jeff worked for MT2Y. Steven W.'s decision to invest in MT2Y was influenced by Jeff's employment with MT2Y and his relationship with defendant.

Mark L. made six or seven investments with defendant in 2006 and possibly 2007, totaling $125,000 or $127,000. Mark L. understood he would not get a return on his investment if MT2Y was not profitable, but he felt MT2Y was growing and doing well. He travelled with defendant in relation to MT2Y business and accompanied defendant to trade shows, sometimes presenting MT2Y products at the shows. Mark L. never received a return on his investment in MT2Y. Nevertheless, he believed MT2Y was "starting to go beyond sustaining itself" when defendant was arrested in June 2010.

Joe E. invested a total of $40,000 in MT2Y in 2006. Defendant told Joe E. that investing in MT2Y involved risk. Defendant never told Joe E. when he would receive dividends, but Joe E. understood that MT2Y would be profitable soon and Joe E. would receive dividends.

The records of the California Department of Corporations did not show that defendant or MT2Y was authorized to offer or sell securities or that either filed a notice of exemption from the requirement of an authorization to offer or sell securities. After searching defendant's home, car, and office, law enforcement officials did not find any bookkeeping records relating to MT2Y.

A jury found defendant guilty of six counts of residential burglary relating to the taking of money from Roy and Barbara on specified dates in 2008 and 2009 (§ 459; counts 1-6), one count of theft from an elder in connection with the 2007 to 2009 transactions involving Roy and Barbara (§ 368, subd. (d); count 14), and two counts of sale of securities by means of false statements (securities fraud) in connection with the

2007 to 2009 transactions involving Roy and Barbara and the 2008 transaction involving Ray and Joanne (Corp. Code, § 25401; counts 16 and 18). The jury acquitted defendant of seven counts of residential burglary relating to the taking of money from Roy and Barbara on specified dates in 2007 and 2008 (§ 459; counts 7-13) and one count of sale of unregistered securities to Roy and Barbara during the period May 2007 to October 2009 (Corp. Code, § 25110; count 15). The jury could not reach a verdict and the trial court declared a mistrial as to the count 17 charge of selling unregistered securities to Ray and Joanne.

DISCUSSION

I

Defendant contends his count 14 conviction for theft from an elder must be reversed because there is insufficient evidence of his intent to permanently deprive Roy and Barbara of their money. He argues the evidence showed he honestly believed his company would become profitable, that he would be able to provide a return on Roy and Barbara's investment, and that he would be able to repay the $24,000 loan. As we will explain, however, defendant's intent to permanently deprive the victims of their money is immaterial in this case.

Section 368, subdivision (d) penalizes theft of the property of a person who is 65 years of age or older by a person who knows or reasonably should know that the victim is at least 65 years in age. (§ 368, subds. (d), (g).) On count 14, the People elected to proceed on the theory of theft by false pretenses rather than theft by larceny or embezzlement.

In 1927, the Legislature consolidated the formerly separate crimes of larceny, embezzlement, and theft by false pretenses into the general crime of theft. (*People v. Ashley* (1954) 42 Cal.2d 246, 258 (*Ashley*); *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1248-1249, fn. 5 (*Kwok*).) The merger did not, however, change the elements of the crimes of larceny, embezzlement, and theft by false pretenses. (*Ashley, supra*, 42 Cal.2d

5

at p. 258; *Kwok, supra*, 63 Cal.App.4th at pp. 1248-1249, fn. 5.) To establish theft by false pretenses, the People were required to prove that (1) the defendant made a false pretense or representation to the owners of property, (2) with the intent to defraud the owners of that property, and (3) the owners transferred the property to the defendant in reliance on the representation. (*Ashley, supra,* 42 Cal.2d at p. 259; *People v. Wooten* (1996) 44 Cal.App.4th 1834, 1842 (*Wooten*); CALCRIM No. 1804.) The intent element of theft by false pretenses is defined by intent to defraud. (See, e.g., *People v. Williams* (2013) 57 Cal.4th 776, 787; *Perry v. Superior Court* (1962) 57 Cal.2d 276, 282; *Ashley, supra,* 42 Cal.2d at pp. 258, 265 ["the essence of the offense of obtaining property by false pretenses is (as it has always been) the fraudulent intent of the defendant"]; *People v. Miller* (2000) 81 Cal.App.4th 1427, 1440; *Wooten*, *supra*, 44 Cal.App.4th at p. 1842; *People v. Fujita* (1974) 43 Cal.App.3d 454, 467; *People v. Britz* (1971) 17 Cal.App.3d 743, 752; *People v. Kagan* (1968) 264 Cal.App.2d 648, 659; 2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against Property, § 52, p. 81.) Intent to permanently deprive the owner of his or her property is not an element of theft by false pretenses. (*Kwok, supra*, 63 Cal.App.4th at pp. 1248-1249, fn. 5; CALCRIM No. 1804.)

Relying on *People v. Avery* (2002) 27 Cal.4th 49 (*Avery*), defendant argues theft by false pretenses requires intent to permanently deprive. But *Avery* did not address the intent requirement for theft by false pretenses; it addressed whether the intent required for a prior Texas burglary conviction was consistent with the intent required in California for larceny, thereby rendering the Texas burglary conviction a prior serious felony under California law. (*Avery, supra,* 27 Cal.4th at pp. 52-54.)

Defendant also cites the fall 2006 version of CALCRIM No. 1804. But CALCRIM No. 1804, which defines theft by false pretenses, was revised in December 2008 and no longer requires proof of intent to permanently deprive the owner of the property to establish theft by false pretenses. (CALCRIM No. 1804; compare CALCRIM No. 1804 (2008) p. 1214 with CALCRIM No. 1804 (Dec. 2008 Supp.) p. 127.) The

6

Bench Notes to the former version of CALCRIM No. 1804 cited *Avery, supra,* 27 Cal.4th 49 for the proposition that the defendant must either intend to permanently deprive the owner of his or her property or to deprive the owner of a major portion of the property's value or enjoyment. (Bench Notes to CALCRIM No. 1804 (2008) p. 1216.) But those references were removed from the bench notes. (Compare Bench Notes to CALCRIM No. 1804 (2008) p. 1216 with Bench Notes to CALCRIM No. 1804 (Dec. 2008 Supp.) pp. 128-129.)

Defendant also cites *People v. Bell* (2011) 197 Cal.App.4th 822 (*Bell*) for the proposition that theft by false pretenses requires the intent to permanently deprive, but we are not persuaded. The defendant in *Bell* used another person's name to convince an apartment lessor that the defendant was creditworthy. (*Id.* at p. 824.) The defendant leased the apartment but subsequently failed to pay rent. (*Ibid*.) The People charged the defendant with identity theft and related offenses, including grand theft. (*Ibid.*) For the grand theft charge, the trial court instructed the jury on theft by false pretenses, and the jury convicted the defendant of grand theft. (*Id.* at pp. 824-826.)

The defendant in *Bell* challenged her conviction, arguing there was insufficient evidence that she intended to permanently deprive the lessor of its property. (*Bell, supra,* 197 Cal.App.4th at p. 825.) Relying on *Avery*, *supra*, 27 Cal.4th 49 and other cases involving theft by larceny, the Court of Appeal in *Bell* upheld the grand theft conviction because there was substantial evidence of the defendant's intent to permanently deprive the lessor of rent. (*Bell, supra,* 197 Cal.App.4th at pp. 826-828.) As we have explained, however, larceny is not the same as theft by false pretenses, and the intent to permanently deprive is not an element of theft by false pretenses.

Defendant claims he had a good faith belief in his ability to pay dividends to Roy and Barbara and repay the loan. But " ' "[n]either the promise to repay, nor the intention to do so, will deprive the false and fraudulent act in obtaining [the property] of its criminality." ' " (*People v. Wieger* (1893) 100 Cal. 352, 357; see also *People v. Silver*

7

(1975) 47 Cal.App.3d 837, 845.) " ' "The offense [of theft by false pretenses] is complete when the property or money has been obtained by [false means], and would not be purged by subsequent restoration or repayment. Evidence of the ability to make the repayment is therefore immaterial and inadmissible. The possession of the means of payment is entirely consistent with the fraud charged." ' " (*Wieger*, *supra*, 100 Cal. at p. 357.)[3]

Defendant also relies on *People v. Curtin* (1994) 22 Cal.App.4th 528, *People v. Counts* (1995) 31 Cal.App.4th 785, and this court's decision in *People v. Beaver* (2010) 186 Cal.App.4th 107 for the proposition that the elements of larceny are subsumed within the elements of theft by false pretenses. From that proposition, defendant further reasons that because larceny by trick requires the intent to permanently deprive, theft by false pretenses also includes that element. Again, however, none of the cases cited by defendant hold that intent to permanently deprive the owner of the property is an element of theft by false pretenses.

Because defendant was prosecuted on count 14 on the theory of theft by false pretenses, and because the intent to permanently deprive is not an element of that theory, it is immaterial to the conviction on count 14 whether the evidence was sufficient to prove defendant's intent to permanently deprive Roy and Barbara of their money.

II

Defendant next contends the trial court erred in failing to instruct the jury on the element of intent to permanently deprive the victims of their money in connection with count 14.

---

[3] Defendant does not address the sufficiency of the evidence supporting his intent to deceive or defraud Roy and Barbara, and thus neither do we. (*People v. Stanley* (1995) 10 Cal.4th 764, 793; *People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4; *People v. Schenk* (1937) 19 Cal.App.2d 503, 505.)

Relying on CALCRIM No. 1804, the trial court instructed: "The potential theory of theft from an elder is theft by false pretense. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] One, the defendant knowingly and intentionally deceived a property owner by false or fraudulent representation or pretense; [¶] Two, the defendant did so intending to persuade the owner to let the defendant or another person take possession and ownership of the property; [¶] And, three, the owner let the defendant or another person take possession and ownership of the property because the owner relied on the representation or pretense." Citing the 2006 version of CALCRIM No. 1804, defendant argues the trial court erred in omitting a fourth element of theft by false pretenses: "(4) [T]he defendant intended to deprive the owner of the property permanently or for so extended a period of time that the owner would be deprived of a major portion of the value of the property."

As we have explained, however, CALCRIM No. 1804 was properly revised in 2008 to delete the element of intent to permanently deprive. The instruction in effect at the time of defendant's trial did not list intent to permanently deprive as an element of theft by false pretenses. (CALCRIM No. 1804 (2011) pp. 1260-1261.) Because intent to permanently deprive is not an element of theft by false pretenses, the trial court was not required to instruct the jury on that element. The trial court did not commit instructional error. We do not address defendant's contentions regarding prejudice as defendant has not demonstrated error.

### III

Defendant further contends the trial court erred in sentencing him to concurrent terms for the convictions on count 14 [theft from an elder] and count 16 [securities fraud] because those convictions were based on the same conduct underlying the burglary convictions on counts 1 through 6. He argues the sentences on counts 14 and 16 must be stayed pursuant to section 654, which prohibits the imposition of multiple punishments for the same course of conduct.

9

The Attorney General agrees that section 654 requires a stay on counts 14 and 16, noting that it appears the trial court reached the same conclusion and inadvertently imposed concurrent sentences on counts 14 and 16 instead of staying them.

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

"Section 654 precludes multiple punishment for a single act or omission, or an indivisible course of conduct. [Citations.] If, for example, a defendant suffers two convictions, punishment for one of which is precluded by section 654, that section requires the sentence for one conviction to be imposed, and the other imposed and then stayed. [Citation.] Section 654 does not allow any multiple punishment, including either concurrent or consecutive sentences. [Citation.]" (*People v. Deloza* (1998) 18 Cal.4th 585, 591-592.)

Here, the burglary convictions on counts 1 through 6 are based on defendant's entry into Roy and Barbara's home to sell them securities by means of false representations and the taking of their money on specified dates in 2008 and 2009. Defendant was acquitted of burglary on counts 7 through 13, which related to transactions involving Roy and Barbara on specified dates in 2007 and 2008. Counts 14 and 16 are based on the same conduct for which defendant was convicted and sentenced on counts 1 through 6 because counts 14 and 16 alleged theft from an elder and securities fraud based on defendant's cumulative acts involving Roy and Barbara.

We agree that the sentences on counts 14 and 16 should be stayed. (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1338; *People v. Alford* (2010) 180 Cal.App.4th 1463, 1466.) We will modify the judgment accordingly.

10

DISPOSITION

The judgment is modified to stay the sentences on counts 14 and 16 pursuant to section 654. As modified, the judgment is affirmed. The trial court shall prepare an amended abstract of judgment reflecting the stay of sentences on counts 14 and 16 and shall forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

                                                        MAURO        , J.

We concur:

_____BLEASE_____, Acting P. J.

_____HOCH_____, J.